**Aldo MAESTRI and Gloria Zook, Plaintiffs–Appellants,**

**v.**

**Joseph JUTKOFSKY, the Town of Taghkanic, the State of New York, Thomas Colwell, Dominic Aquilio, Individually and as Officers of the New York State Police, and Ralph Del Pozzo, Jr., and Gordon Zook, Defendants,**

**Joseph Jutkofsky, Defendant–Appellee.**

**No. 1019, Docket 88–7060.**

United States Court of Appeals, Second Circuit.

Argued April 20, 1988.

Decided Oct. 20, 1988.

Christopher Massaroni, Albany, N.Y. (DeGraff, Foy, Conway, Holt–Harris & Mealey, Albany, N.Y., of counsel), for plaintiffs-appellants.

Roger J. Cusick, Albany, N.Y. (Maynard, O'Connor & Smith, Albany, N.Y., of counsel), for defendant-appellee.

Before FEINBERG, Chief Judge, LUMBARD and MESKILL, Circuit Judges.

**LUMBARD, Circuit Judge:**

This appeal presents the question of whether a town justice may invoke the doctrine of judicial immunity as a defense against a suit alleging that he knowingly exercised authority outside his territorial jurisdiction. Aldo Maestri and Gloria Zook brought this action under 42 U.S.C. §§ 1983, 1985 and 1988 in the Northern District of New York, against Jutkofsky and other defendants. They ·allege that Jutkofsky, then a Town Justice of the town of Taghkanic, New York,[1] ordered their arrest and detention in May 1983 on charges of profanity that they allegedly had uttered in the town of Germantown. The complaint alleges that Jutkofsky, as a town justice of Taghkanic, had no authority over the town of Germantown. Judge McAvoy held that Jutkofsky is entitled to judicial immunity and granted summary judgment in his favor. We find that the allegations of Maestri's and Zook's complaint, if proven, show that Jutkofsky is not entitled to judicial immunity for issuing an arrest warrant for an offense committed in another town regarding which he had no jurisdiction.

## I.

The relevant facts, which are for the most part undisputed and which we review in the light most favorable to Gloria Zook and Maestri, are as follows: Gordon Zook and his ex-wife Gloria Zook were engaged in litigation over the right to possession of property in Germantown, Columbia County. Gordon Zook, over Gloria Zook's objection, had authorized Ralph DelPozzo, Sr., a real estate broker who is also a town justice of Germantown, to sell the house. On April 17, 1983, when Gloria Zook and Maestri visited the premises, they saw Ralph DelPozzo, Jr., a salesman in his father's employ, showing the house to prospective purchasers. Gloria Zook exchanged words with DelPozzo, Jr. and the prospective purchasers, during which Gloria Zook and Maestri allegedly used profane language and accused DelPozzo, Jr. of trespassing.

On the same day, DelPozzo, Jr. signed and swore to complaints charging Gloria Zook and Aldo Maestri with harassment under N.Y. Penal Law § 240.25(5); Gordon Zook later signed a deposition in support of the criminal complaint against Gloria Zook and signed and swore to a complaint charging her with trespass under N.Y. Penal Law § 140.05. DelPozzo presented the complaints to Jutkofsky, town justice of the town of Taghkanic, which office he had held since 1977. Taghkanic is also in Columbia County but is several miles distant from, and does not adjoin, Germantown. Jutkofsky issued warrants for the arrest of Maestri and Gloria Zook on harassment charges and recommended that the arraigning judge set bail at $1,000 each.

Maestri and Zook were arrested in Saugerties, New York, on May 2, 1983 and taken to Livingston, where they were arraigned before Livingston Town Justice Robert Moore, who set bail at $500 each. When Maestri and Zook were unable to raise bail, Judge Moore remanded them to jail and ordered their appearance before Judge Jutkofsky in Taghkanic three days later. When Maestri and Zook were brought before Judge Jutkofsky in Taghkanic on May 5, he remanded them to await their first appearance in Germantown, where the alleged offense had occurred. The appearance in Germantown was set for May 18, thirteen days later, before Town Justice Robert Delaney.[2] When Maestri

---

1. Jutkofsky was a town justice from 1977 until February 5, 1986, when the New York Court of Appeals permanently removed him from office. *In the Matter of Joseph Jutkofsky, Jr.,* N.Y.Ct. App., Feb. 5, 1986 (unpublished order). The New York State Commission on Judicial Conduct, in recommending Jutkofsky's removal, wrote that he "has repeatedly abused his judicial powers ... [and] disregarded well-established, fundamental rights of defendants so as to create an appearance of bias and damage public confi-dence in the impartiality and integrity of the judiciary." In the Matter of Joseph Jutkofsky, Jr., Determination of the State of New York Commission on Judicial Conduct, Dec. 24, 1986, at 34.

2. The record does not disclose any good reason for the thirteen day delay. In total, Maestri and Zook were incarcerated for sixteen days. New York law permits pretrial detention of only five days in the case of a violation, N.Y.C.P.L. § 30.30(2)(d), and a maximum prison sentence

and Zook finally appeared before Judge Delaney on May 18, he ordered their release and dismissed the charges against them.

The parties do not dispute that Jutkofsky, as Town Justice of the town of Taghkanic, had no jurisdiction over a violation [3] occurring in Germantown. Jutkofsky has not alleged or argued, either in the district court or on appeal, that he did not know from the complaint papers that he was without jurisdiction to act on the complaints or to issue warrants for Maestri and Zook's arrests.

Under New York's Criminal Procedure Law, a town justice has jurisdiction to issue warrants of arrest and to preside over criminal charges constituting violations only in the town in which the offense was committed, except that if a town justice of the town in which the violation occurred is unavailable at the time that the complaint is sought to be filed and the warrant obtained, the complaint may be filed with the town court of any adjoining town within the same county. N.Y.C.P.L. §§ 100.55, 120.30(2). Very probably, DelPozzo, Jr. and Gordon Zook felt that it would be inappropriate to file in Germantown because DelPozzo, Sr. was a town justice of the town of Germantown. The complaints could then have been brought and the arrest warrants issued only in one of the two adjoining towns of Livingston and Clermont. Under no circumstances, however, would the town justice for Taghkanic have had any authority to act because the town of Taghkanic does not adjoin the town of Germantown. (The towns of Germantown and Taghkanic are nearly four miles distant at their closest points.)

On April 15, 1986, Maestri and Zook commenced this action in the Northern District, naming as defendants Jutkofsky, the town of Taghkanic, the State of New York, Del-Pozzo, Jr., Gordon Zook and two state police officers. In their amended complaint, filed on April 30, 1986, Maestri and Zook alleged that the defendants, acting under color of state law, conspired to, and thereafter did, deprive them of their rights, privileges and immunities under state and federal laws and constitutions. Jutkofsky answered on July 21, 1986, denying substantially all of Maestri and Zook's allegations and presenting several affirmative defenses including that of judicial immunity. Finally, Jutkofsky moved for summary judgment on the grounds of judicial immunity on September 8, 1987. The motion was argued before Judge McAvoy on December 14, 1987, and he granted summary judgment in Jutkofsky's favor on December 17.

## II.

The principle of judicial immunity is well established. The Supreme Court as early as 1872 recognized the common law doctrine, writing in *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1871), that it is "of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Id.* 80 U.S. at 347. This judicial immunity doctrine, recently reaffirmed in *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), protects judges from civil actions even when they perform judicial acts in excess of their authority, even when such acts are allegedly done maliciously or corruptly. *Stump v. Sparkman, supra,* at 355–56, 98 S.Ct. at 1104–05 (citing *Bradley v. Fisher, supra,* 80 U.S. at 351). The courts, however, have made a critical distinction: a judge who performs a judicial act in excess of his or her jurisdiction is immune to civil suit; a judge who acts in the clear absence of jurisdiction is not. When a judge clearly lacks jurisdiction over the subject matter, "any authority exercised is a usurped authority." *Bradley v. Fisher, supra,* at 351–52. The

---

of fifteen days upon conviction of any one violation, N.Y. Penal Law § 10.00(3).

**3.** A violation under New York law is "an offense, other than a [traffic infraction], for which a sentence to a term of imprisonment in excess of fifteen days cannot be imposed." N.Y. Penal Law § 10.00(3).

question, therefore, is whether Jutkofsky acted in the clear absence of jurisdiction when he entertained complaints and issued arrest warrants when the alleged misconduct occurred in a town over which he necessarily and obviously knew he had no jurisdiction.

The Supreme Court in *Bradley* described the difference between "excess of jurisdiction" and "clear absence of all jurisdiction" by example: If a probate court, the jurisdiction of which is limited to wills and estate settlement, should conduct a criminal trial, jurisdiction over the subject matter would be entirely wanting, and, as this lack would necessarily be known to the court, the judge would not be entitled to judicial immunity. If, on the other hand, a judge of a criminal court were to try a party for a nonexistent offense or sentence a convict to a term longer than that permitted by law, that judge would be entitled to the protection of the judicial immunity doctrine since those acts would be "particulars for his judicial consideration." *Id.* at 351; *see also Stump v. Sparkman, supra,* at 357 n. 7, 98 S.Ct. at 1105 n. 7. This distinction has been utilized to aid in the determination of whether judicial immunity should obtain, with "the scope of the judge's jurisdiction [to be] construed broadly." *Stump v. Sparkman, supra,* at 356, 98 S.Ct. at 1105. *See, e.g., id.* at 357, 98 S.Ct. at 1105 (state circuit judge with general jurisdiction was immune to suit alleging absence of jurisdiction to authorize sterilization of a minor); *Heimbach v. Village of Lyons,* 597 F.2d 344 (2d Cir.1979) (maliciously issued arrest warrant does not subject a judge of a criminal court to loss of immunity).

■ Because scrutiny of a judge's state of mind would hinder the adjudicatory process in the very manner that the judicial immunity doctrine is designed to prevent, a judge will be denied immunity only where it appears, first, that the judge acted in the clear absence of jurisdiction, and second, that the judge must have known that he or she was acting in the clear absence of jurisdiction. This test, composed both of an objective element—that jurisdiction is clearly absent, *i.e.,* that no reasonable judge would

have thought jurisdiction proper—and of a subjective element—that the judge whose actions are questioned actually knew or must have known of the jurisdictional defect—protects judicial acts from hindsight examination while permitting redress in more egregious cases, such as where a judge knowingly acts outside his territorial jurisdiction.

■ On the facts which we take to be undisputed, we find that Jutkofsky knowingly acted in the clear absence of territorial jurisdiction when he signed the arrest warrants and caused the incarceration of Maestri and Zook. No reasonable town judge would have thought himself to have had jurisdiction over a non-adjoining town. Jutkofsky thus acted unreasonably when he entertained DelPozzo, Jr.'s complaints. As for Jutkofsky's awareness of the extent of his authority, it is undisputed that he knew that the incident at the Zooks' house occurred in Germantown and that he knew that he lacked subject matter jurisdiction over offenses occurring in Germantown. Moreover, Jutkofsky's counsel, in response to a direct question at oral argument, was willing to concede *arguendo* that Jutkofsky knew that he had no jurisdiction over a violation occurring in Germantown. Finally, Jutkofsky has not cited, nor have we found, any case in which a judge who had exercised authority outside the territory properly within his jurisdiction was nevertheless held to be entitled to judicial immunity.

■ For a judge to assume authority outside the geographic bounds of his office is the kind of clear judicial usurpation which cannot be condoned by any grant of immunity. No public policy would be served by granting immunity for such arrogant excesses of authority.

We reverse the judgment of the district court and remand the case for further proceedings.