Herbert FLEMING, Plaintiff,

v.

Eddie DOWDELL, et al., Defendants.

Civil Action No. 2:03cv1246–D.

United States District Court,
M.D. Alabama,
Northern Division.

March 29, 2005.

Robert F. Lewis, Robert F. Lewis PC, Birmingham, AL, Jon E. Lewis, G. Griffin Sikes, Jr., Montgomery, AL, for Plaintiff.

Greg Griffin, Chief Counsel, Hugh Davis, Principal Litigation Counsel, Steve Simmons, Litigation Counsel, State of Alabama Board of Pardons and Paroles, Montgomery, AL, for Eddie Dowdell.

Alyce S. Robertson, Office of the Attorney General, Montgomery, AL, for Defendants.

## MEMORANDUM OPINION AND ORDER

IRA DeMENT, Senior District Judge.

## I. INTRODUCTION

Before the court is a motion for summary judgment (Doc. No. 57) filed by Defendants Eddie Dowdell, Johnnie Johnson, Donald Parker, Gladys Riddle and Martha White. Accompanying said motion are a memorandum brief and an evidentiary submission. (Doc. Nos.58–59.) Plaintiff Herbert Fleming filed a brief in opposition and an evidentiary submission. (Doc. Nos.68–69.)

Also before the court is a motion for summary judgment (Doc. No. 52) filed by Defendant Beth Poe. Poe filed a brief in support of her motion and an evidentiary submission. (Doc. Nos.53–54.) A response, reply and surreply followed. (Doc. Nos.63, 66, 67.)

Fleming commenced this lawsuit, seeking money damages for deprivations of rights in violation of 42 U.S.C. § 1983 and state law when he was continued on parole and, ultimately, incarcerated on parole violations, despite the fact that Fleming's writ of habeas corpus had been granted, and his underlying judgment of conviction vacated, by a federal court. Dowdell, Johnson, Parker, Riddle and White are employees of the Alabama Board of Pardons and Paroles who played a role in Fleming's parole supervision and parole violation proceedings, and Poe is the assistant state attorney general who opposed Fleming's writ of habeas corpus. There is no dispute that Fleming suffered a substantial deprivation of liberty in this case, as he remained under parole supervision and was incarcerated on parole violations for approximately five years longer than he was legally required. There also is no dispute that neither Fleming, Dowdell, Johnson, Parker, Riddle nor White was aware of the federal court's order.

Although what happened to Fleming is grievous, having carefully considered the arguments of counsel, the relevant law and the record as a whole, the court finds the

above Defendants cannot be held liable for the liberty deprivations under either § 1983 or state law. The court, therefore, finds that the motions for summary judgment are due to be granted.

## II. JURISDICTION AND VENUE

The court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 for all claims arising under federal law. The court also has original jurisdiction over claims based upon violations of civil rights. *See* 28 U.S.C. § 1343. Pursuant to 28 U.S.C. § 1367, the court has supplemental jurisdiction over the state law claim. The parties do not contest personal jurisdiction or venue.

## III. STANDARD OF REVIEW

A court considering a motion for summary judgment must construe the evidence and make factual inferences in the light most favorable to the nonmoving party. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment is entered only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). At this juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). This determination involves applying substantive law to the substantive facts that have been developed. A dispute about a material fact is genuine if a reasonable jury could return a verdict for the nonmoving party, based on the applicable law in relation to the evidence developed. *See id.* at 248, 106 S.Ct. 2505; *Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The burden then shifts to the non-moving party who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Summary judgment will not be entered unless the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. *See id.* at 587, 106 S.Ct. 1348.

## IV. BACKGROUND

In January 1991, Plaintiff Herbert Fleming was convicted upon a plea of guilty and sentenced in the Circuit Court of Etowah County, Alabama, on a reduced charge for receiving stolen property. (2nd Am. Compl. ¶ 7 (Doc. No. 23).) Because Fleming was a habitual offender, he was sentenced to life imprisonment and was committed to the custody of the Alabama Department of Corrections. (*Id.*)

While confined in a state penitentiary, Fleming filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Northern District of Alabama. (*Id.* ¶ 8.) He named as respondents "Warden Thomas" and the Attorney General of the State of Alabama and sought relief from the 1991 judgment and sentence of the Circuit Court of Etowah County. Defendant Beth Poe, an assistant attorney general, represented the respondents in the habeas corpus proceedings.[1] (Pl. Habeas

---

1. Poe has served as an assistant attorney general for 20 years. In that position, Poe has

Corpus Pet. (Doc. No. 65, Ex. 1); Resp'ts Answer to Pl. Habeas Corpus Pet. (Doc. No. 65, Ex. 2).)

On January 26, 1998, during the pendency of his habeas corpus proceedings, Fleming was released to parole supervision, subject to certain conditions and restrictions. (Certificate of Parole (Doc. No. 54, Ex. 4).) Defendant Eddie Dowdell, a parole officer employed by the Alabama Board of Pardons and Paroles ("BOPP"), supervised Fleming while he was on parole. (2nd Am.Compl.¶¶ 2, 11.) The restrictions of Fleming's parole included, in part, a requirement that Fleming "periodically meet with or otherwise report to" Dowdell. (*Id.*)

On May 5, 1998, while Fleming was serving his term of parole, the late Honorable Edwin L. Nelson, United States District Judge for the Northern District of Alabama, adopted the recommendation of the magistrate judge and entered a final judgment granting Fleming's habeas corpus petition. (*Id.* ¶ 13; Final Judgment (Doc. No. 59, Ex. 4).) [2] As grounds, the district court found that, because the offense to which Fleming pleaded guilty was not a lesser included offense of the original charge in the indictment, Fleming's judgment of conviction was obtained without

due process of law, in violation of the Fifth and Fourteenth amendments. (Doc. No. 54, Ex. 5.) In the final judgment, the district court "ordered that any retrial of petitioner must commence within 120 days" of the date of entry of the final judgment. (2nd Am. Compl. ¶ 13; Final Judgment (Doc. No. 59, Ex. 4).)

The district court's final judgment also contained a footnote indicating that a copy of the magistrate judge's recommendation had been served on Fleming, but had been returned to the clerk of the court, marked "return to sender." [3] (Final Judgment (Doc. No. 59, Ex. 4).) In the same footnote, the district court stated that it independently had attempted to ascertain Fleming's current mailing address through the Central Records Division of the Alabama Department of Corrections. (*Id.*) As further noted, the Central Records Division advised that Fleming had been paroled and that the only address in its records for Fleming was 1200 Kentucky Avenue, Gadsden, Alabama. The district court, thus, directed the clerk of the court to mail the final judgment, vacating Fleming's conviction, to the Gadsden address.[4] (*Id.*) The court records also reflect that copies of the May 5, 1998 final judgment

worked almost exclusively in the criminal appeals division of the attorney general's office and routinely has handled petitions for writs of habeas corpus. (Poe Dep. at 11–13, 25–26 (Doc. No. 65).)

2. While the parties have filed as exhibits the pertinent portions of the court records in Fleming's habeas corpus proceedings, the court also may take judicial notice of the official court records in that case. *See* Fed. R.Evid. 201; *Zimmerman v. Spears*, 565 F.2d 310, 312 (5th Cir.1977) (judicial notice taken of earlier habeas proceedings in different court).

3. Fleming failed to keep the federal district court apprized of his current address. The

last notice of a change of address the district court received from Fleming was on March 4, 1997, when he was transferred to the Childersburg Work Release Center. (Pl. Dep. at 29–31 (Doc. No. 54, Ex. 10); Pl. Not. Change of Address (Doc. No. 54, Ex. 3).) Although Plaintiff asserts that he notified the court of his change of address when he was paroled (Pl. Dep. at 31 (Doc. No. 54)), he provides no evidentiary support for this assertion.

4. The court notes that the district court in the Northern District of Alabama followed the federal procedural rules for service by mailing the pleadings to Fleming's last known address. *See* Fed.R.Civ.P. 5(b)(2)(B) & 77(d); Rule 11 of the Rules Governing Habeas Corpus Cases.

were mailed to Poe and the Attorney General of the State of Alabama. (*Id.*)

Upon receipt of the magistrate judge's recommendation, Poe discussed the case with her supervisor, after which Poe conducted research to determine whether to file an objection to the recommendation and, ultimately, whether to appeal any unfavorable judgment. (Poe Dep. at 31–34 (Doc. No. 65).) Poe also engaged in several communications, by telephone and letter, with the district attorney who prosecuted Fleming on the underlying criminal charges and provided him (the district attorney) a copy of the magistrate judge's recommendation. (*Id.* at 41–42; Letters (Doc. No. 54, Exs.6, 8).) Poe advised the district attorney that, based on her research, she believed that the magistrate judge's findings were correct and that, therefore, unless the district attorney proffered a reasonable argument, she would not file an objection to the recommendation. (Letter (Doc. No. 54, Ex. 6).) The district attorney advised Poe that the State of Alabama intended to retry Fleming on the original charges. (Poe Dep. at 42.) Poe, at that point, had no further involvement in Fleming's case. (*Id.* at 51–53.)

Ultimately, for reasons not in the record, the State of Alabama did not retry Fleming. (2nd Am.Compl.¶ 15.) At the latest then, after the expiration of the 120-day time frame for retrial, Fleming was released from all attendants of his state court judgment of conviction based on the district court's final judgment granting habeas relief to Fleming.

On January 12, 2000, some two years and eight months after the district court in the Northern District of Alabama entered its final judgment in Fleming's habeas corpus lawsuit, Dowdell arrested Fleming for parole violations based on a positive drug test for marijuana and a failure to pay restitution. (Dowdell Dep. at 21, 28 (Doc. No. 59, Ex. 7); Report of Parole Violation (Doc. No. 46, Ex. 4).) It is undisputed that Dowdell, like Fleming, did not know that Fleming's judgment of conviction from which the parole violations stemmed had been set aside. (Dowdell Dep. at 37–38 (Ex. to Doc. No. 59); 2nd Am. Compl. ¶ 16.)

Defendant Donald Parker ("Parker"), now retired, formerly served as the executive director of the BOPP. (Parker Aff. at 1 (Ex. to Doc. No. 37).) After reviewing Dowdell's report charging Fleming with violating conditions of his parole, Parker determined that the charges were supported by "reasonable cause." (*Id.*) Parker, thus, "authoriz[ed]" the Department of Corrections to issue a fugitive warrant for the retaking and detaining of Fleming. (*Id.*); see Ala.Code § 15–22–31(a) (1975). Fleming, thus, was held in custody on the fugitive warrant issued by the Department of Corrections at the behest of Parker. Parker also was unaware that Fleming's judgment of conviction had been set aside. (2nd Am. Compl. ¶ 16; Parker Aff. at 2 (Ex. to Doc. No. 37).)

Thereafter, on January 26, 2000, Defendant Martha White, acting as a parole court hearing officer, see Ala.Code § 15–22–32 (1975), conducted a fact-finding hearing on the parole violation charges. (*See* form titled, "Action of the Board Subsequent to Parole Court" (Doc. No. 59, Ex. 10); White Dep. at 77–79, 89–90 (Ex. to Doc. No. 59).) Based on Fleming's admission of guilt on the charges, (*see* form titled "Finding of Guilt Upon Guilty Plea" (Doc. No. 46, Ex. 9)), White found that Fleming was guilty of violating his parole. (*Id.*) White recommended to the Board that Fleming's parole be revoked. (*Id.*; see also Doc. No. 59, Ex. 10.) Acting on White's recommendation, Defendants Gladys Riddle and Johnnie Johnson Jr.,

members of the BOPP, revoked Fleming's parole on March 8, 2000.(*Id.*) Fleming was returned to prison for a minimum term of two years. (Report of Parole Violation (Doc. No. 46, Ex. 4); 2nd Am. Compl. ¶ 19.)

It is undisputed that Johnson, Riddle and White did not know that a federal court had vacated Fleming's judgment of conviction. (2nd Am. Compl. ¶ 16; White Dep. at 33–35, 79 (Ex. to Doc. No. 59).) It also is undisputed that neither Johnson, Riddle nor White independently inquired into the validity of the underlying judgment of conviction. (White Dep. at 90 (Ex. to Doc. No. 59).) White says, though, that had Fleming informed her that he had filed a habeas corpus writ challenging the validity of the underlying judgment of conviction, she would have checked on the status of that case. (White Dep. at 34–35 (Doc. No. 54, Ex. 13); Riddle Dep. at 45 (Doc. No. 54, Ex. 14).) White says, however, that she is unaware of any procedure in place requiring the BOPP to verify the validity of a facially-valid judgment of conviction. (White Dep. at 90 (Ex. to Doc. No. 59).)

More than three years passed, and, finally, on July 27, 2003, while incarcerated on the parole violations, Fleming wrote the United States District Court for the Northern District of Alabama, inquiring about the status of his habeas corpus petition. (Pl. Letter (Ex. 9 to Doc. No. 54); 2nd Am. Compl. ¶ 22.) In response to Fleming's letter, on August 12, 2003, the district court entered an order, directing that Fleming "be RELEASED FORTHWITH from incarceration." (2nd Am. Compl. ¶ 24; Aug. 12, 2003 Order at 1 (Ex. to Compl.).) The order provided that "[t]he State of Alabama may not re-try [Fleming] on the vacated conviction, nor may the vacated conviction be used to incarcerate [Fleming] in the future or enhance the penalty for any subsequent conviction [Fleming] may receive." (Aug. 12, 2003 Order at 1 (Ex. to Compl.).) Fleming was released on August 13, 2003, after serving "3 years, 7 months and [1] day" in the state prison system on parole violations which stemmed from a vacated judgment of conviction. (2nd Am. Compl. ¶ 21.)

Seeking monetary damages under 42 U.S.C. § 1983 and state law for injuries resulting from the foregoing events, Fleming commenced this lawsuit on November 24, 2003, alleging § 1983 constitutional claims under the Eighth and Fourteenth amendments to the United States Constitution. The Second Amended Complaint contains four counts. In Count 1, Fleming alleges that he was deprived of "liberty without due process of law," in violation of the Fourteenth Amendment, and was subjected to cruel and unusual punishment, in contravention of the Eighth Amendment. (*Id.* ¶ 26.) In this count, he sues, among others, Dowdell, Johnson, Parker, Poe, Riddle and White.[5]

In Count 2, Fleming asserts that Dowdell, Johnson, Parker, Poe, Riddle and White are liable to him for false imprisonment as defined by state law. (*Id.* ¶¶ 27–30.) As grounds, Fleming avers that, during the time frame he was under parole supervision after which his underlying judgment of conviction had been vacated, and from January 12, 2000, to August 13, 2003 (i.e., the time period during which Fleming was incarcerated on parole violations), each Defendant "unlawfully and without authority exerted compulsory con-

---

5. Also named are two employees of the Central Records Office of the Alabama Department of Corrections. (2nd Am.Compl.¶ 3.) Fleming's claims against these defendants are not before the court at this time.

trol over and interfered with [ ] Fleming's movements and liberty." (*Id.* ¶ 28.)

Count 3 is lodged only against Johnson and Riddle. Fleming alleges that, in violation of the Eighth and Fourteenth amendments, these two Defendants unlawfully revoked Fleming's parole and "without proper authority ordered and directed that [ ] Fleming be arrested and confined at a state penitentiary pursuant to his invalidated conviction and sentence." (*Id.* ¶¶ 31–34.)

Finally, Count 4 asserts a state law claim for false imprisonment against Johnson and Riddle predicated on allegations that, "in excess of their lawful authority," they "revoked the parole granted [ ] Fleming from the sentence imposed pursuant to his invalidated conviction and sentence and directed that [he] be arrested and confined at a state penitentiary pursuant to his invalidated conviction and sentence." (*Id.* ¶ 37.) On each count in the Second Amended Complaint, Fleming seeks $5,000,000 in compensatory damages and $5,000,000 in punitive damages.[6] (*Id.* at 7, 9.)

## V. DISCUSSION

Defendants move for summary judgment, asserting that they are entitled to absolute and qualified immunities on the 42 U.S.C. § 1983 claims and State-agent immunity on the state law claims for false imprisonment. Moreover, Defendants contend that the statute of limitations has run on the § 1983 claims. Fleming opposes each ground for summary judgment.

First, the court addresses the motion for summary judgment filed by the employees of the BOPP, i.e., Dowdell, Johnson, Parker, Riddle and White. Second, the court examines Poe's motion for summary judgment.

### A. *Dowdell, Johnson, Parker, Riddle and White*

#### 1. *42 U.S.C. § 1983 constitutional claims*

Dowdell, Johnson, Parker, Riddle and White contend that, in their individual capacities, they are absolutely immune from liability in damages under 42 U.S.C. § 1983 on the basis of quasi-judicial immunity. Alternatively, Dowdell contends that he is protected from individual liability under the doctrine of qualified immunity.

Before proceeding to the immunity analyses, the court addresses two preliminary issues. First, it is important to ascertain what constitutional rights Fleming deems these Defendants to have violated, particularly given that Fleming's Second Amended Complaint and his pleadings filed in response to the summary judgment motion are not wholly congruous as to the consti-

---

**6.** Although the Second Amended Complaint is silent as to whether Fleming is suing Defendants in their individual capacities, official capacities, or both, the court concludes that Fleming intended an individual-capacity lawsuit for two reasons. First, Fleming seeks punitive damages from the various government officials. In § 1983 actions, punitive damages are only available from government officials when sued in their individual capacities. *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 268–70, 101 S.Ct. 2748, 69

L.Ed.2d 616 (1981). Because Fleming may not obtain punitive damages from the government officials in their official capacities, the logical inference is that Fleming seeks punitive damages from them individually. Second, Defendants have raised the affirmative defense of qualified immunity. Raising and arguing the defense of qualified immunity is sufficient to create a presumption that a lawsuit is filed against a defendant in his or her individual capacity. *See Fitzgerald v. McDaniel,* 833 F.2d 1516 (11th Cir.1987).

tutional theories of liability. *See Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) ("The first step in any [§ 1983] claim is to identify the specific constitutional right allegedly infringed."); *see also Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Second, the court examines the threshold question of whether a constitutional violation has occurred in the first place because the absence of a constitutional violation obviates the need to analyze the immunity defense. *Cf. Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ("The initial inquiry is whether a constitutional right would have been violated on the facts alleged, for if no right would have been violated, there is no need for further inquiry into [qualified] immunity.").

### (a) Identifying the Specific Constitutional Right Allegedly Infringed

In the Second Amended Complaint, Fleming alleges that Dowdell, Johnson, Parker, Riddle and White deprived him of liberty without due process of law in violation of the Fourteenth Amendment "and/or" violated the Eighth Amendment's prohibition against cruel and unusual punishment.[7] (2nd Am. Compl. ¶ 26 (Doc. No. 23).) Fleming, however, has abandoned the Eighth Amendment claim as to all of the BOPP Defendants, except Parker.[8] As to Johnson, Riddle and White, Fleming states: "The legal basis for the § 1983 claim against these defendants is that by their actions in revoking the parole from a

non-existent and invalidated conviction and sentence, these defendants unlawfully deprived Fleming of his Fourth and/or Fourteenth Amendment rights by causing his detention within a penal institution of the State of Alabama without any lawful authority to do so." (Doc. No. 30 at 2–3.) Also abandoning reliance on the Eighth Amendment, Fleming states that "[t]he legal basis for the § 1983 claim against [Dowdell] is the violation of the Fourth and/or Fourteenth Amendment[s] by Dowdell that occurred when Dowdell unlawfully and without authority seized and arrested [Fleming] and took him into custody, restrained and interfered with his liberty without any lawful authority to do so." (Doc. No. 19 at 2.)

Moreover, responding to the BOPP Defendants' motion for summary judgment, Fleming proposes a new basis for holding Johnson and Riddle liable under § 1983 for a Fourteenth Amendment violation. Fleming contends that, not only are they liable for their personal participation, but Johnson and Riddle, as policymakers (Doc. No. 68 at 5 & n. 2, citing Johnson Dep. at 17–18), are liable for "their failure ... to establish reasonable policies and procedures to help ensure that the [BOPP] did not unlawfully imprison or interfere with the liberty of those over whom the [BOPP] had no authority to exercise any such authority." (*Id.* at 5.) Fleming submits that "a state agency which operates without a policy that so requires is being deliberately indifferent to the rights of the state's citizens." (*Id.* at 7.)

---

**7.** For ease of reference, the court refers collectively to these defendants as the "BOPP Defendants."

**8.** The brief which Fleming submitted in response to the joint motion for summary judgment filed by Dowdell, Johnson, Parker, Riddle and White contains no discussion of the issues raised by Parker. (*See* Doc. No. 68.)

Fleming's omission constitutes an abandonment of his claims against Parker. *See Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir.1995) (abandoned claims) Notwithstanding Fleming's abandonment, the foregoing discussion applies equally to Fleming's claims against Parker.

**(b) Ascertaining Whether a Constitutional Violation Has Occurred**

**(i) Fourteenth Amendment due process claim predicated on Dowdell, Johnson, Parker, Riddle and White's personal participation in the alleged violation**

■ There is no dispute that, for more than five years, Fleming was held in state custody without any lawful authority. Dowdell, Johnson, Parker, Riddle and White, though, assert that their lack of knowledge that Fleming's underlying judgment of conviction had been vacated negates their liability under the Fourteenth Amendment. For the reasons to follow, the court agrees with Defendants and finds that their lack of knowledge of the federal court's order demonstrates that they did not act with deliberate indifference as is required to state a claim under the Fourteenth Amendment for their personal participation.

Fleming correctly cites *Cannon v. Macon County,* for the proposition that prisoners have a "constitutional right to be free from continued detention after it was or should have been known that the detainee was entitled to release." 1 F.3d 1558, 1563 (11th Cir.1993). In *Cannon,* where the § 1983 plaintiff was arrested and incarcerated due to a misidentification, the Eleventh Circuit cited cases from the Fifth and Seventh circuits which also expressly recognized this constitutional right. *Id.* (citing *Sivard v. Pulaski County,* 959 F.2d 662 (7th Cir.1992) (continued deten-

tion where sheriff knew it was wrongful states claim under § 1983 for due process violation), modification on rehearing on other grounds, 15 F.3d 1022 (11th Cir. 1994) (per curiam); *Sanders v. English,* 950 F.2d 1152 (5th Cir.1992) (failure to release after officer knew or should have known that plaintiff had been misidentified gives rise to cause of action under § 1983)).

■ Fleming's § 1983 claim predicated on allegations that Dowdell, Johnson, Parker, Riddle and White caused him to be unlawfully incarcerated on parole violations, by virtue of the fact that there no longer existed a valid underlying judgment of conviction, properly is analyzed under the Fourteenth Amendment, not the Fourth Amendment. *See id.* Such a claim, as in *Cannon,* basically is one of "false imprisonment rising to the level of a liberty deprivation," in violation of the Fourteenth Amendment's substantive due process guarantee. *Id.* at 1561–62; *see also Ortega v. Christian,* 85 F.3d 1521, 1526 (11th Cir.1996) (arresting officer liable in § 1983 lawsuit under Fourteenth Amendment for subsequent false imprisonment of plaintiff); *Douthit v. Jones,* 619 F.2d 527, 532 (5th Cir.1980) (finding claim based on continued confinement without valid judicial order was cognizable under § 1983 as a deprivation of due process). Summary judgment, therefore, is due to be entered in favor of the BOPP Defendants on a Fourth Amendment claim premised on the unlawful detention.[9]

For the reasons to follow, the court finds that the evidence against Dowdell, Parker,

---

**9.** Additionally, dismissal of the Fourth Amendment claim is proper because the Fourth Amendment is nowhere mentioned in the Second Amended Complaint. A complaint may not be amended by briefs in opposition to a motion to dismiss or motion for summary judgment which, in effect, is what Fleming has attempted to do. *See Gilmour v.* *Gates, McDonald and Co.,* 382 F.3d 1312, 1315 (11th Cir.2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); *see also Thomason v. Nachtrieb,* 888 F.2d 1202, 1205 (7th Cir.1989) ("It is a basic principle that the complaint may not be amended by

Johnson, Riddle, and White is insufficient as a matter of law to establish a transgression of the Fourteenth Amendment's due process guarantee because none of the Defendants possessed the requisite culpable state of mind. In *Cannon*, the court observed:

> The defendant's state of mind is ... relevant to a § 1983 claim for substantive due process violations. The Supreme Court has stated that negligent conduct does not give rise to § 1983 liability for resulting unintended loss of or injury to life, liberty, or property. *Davidson v. Cannon*, 474 U.S. 344, 347, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 677, 88 L.Ed.2d 662 (1986). Neither the *Davidson* nor the *Daniels* decision, however, articulated the precise level of culpability necessary to give rise to § 1983 liability for deprivations of due process rights.

> This court has, in cases dealing with prisoners and other persons in state custody, held that a showing of deliberate indifference is required to establish a violation of substantive due process rights protected by the fourteenth amendment. The deliberate indifference requirement was adopted based on analogies to eighth amendment situations where the defendant's state of mind was relevant to the issue of whether a constitutional violation has occurred in the first place. *See Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (deliberate indifference to prisoner's serious illness or injury violates eighth amendment prohibition against cruel and unusual punishment); *Edwards v. Gilbert*, 867 F.2d 1271 (11th Cir.1989) (deliberate indifference show-

> ing necessary in prisoner suicide case alleging § 1983 cause of action for violation of substantive rights protected by eighth and fourteenth amendments); *Taylor v. Ledbetter*, 818 F.2d 791 (11th Cir.1987) ... (child abused by foster care parent must show deliberate indifference or gross negligence to establish § 1983 liability in action brought against state officials for violation of substantive due process rights protected by fourteenth amendment). *See also Baker v. McCollan*, 443 U.S. 137, 140 n. 1, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (discussing state of mind necessary to establish certain constitutional violations as separate and distinct from the state of mind sometimes necessary to establish § 1983 liability).

*Id.* at 1563.

Pursuant to *Cannon*, the court finds that "deliberate indifference" is the standard which must guide the court. "[D]eliberate indifference entails something more than mere negligence, ... [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

As stated, it is undisputed that the BOPP Defendants did not have actual knowledge that a federal court had vacated Fleming's underlying judgment of conviction. The BOPP Defendants also were not parties to the habeas corpus litigation so as to be charged with constructive knowledge of the federal court's orders. *See Salahuddin v. Coughlin*, 781 F.2d 24, 27 (2d Cir.1986) (parties to lawsuit are charged with constructive knowledge of court orders).

the briefs in opposition to a motion to dismiss[.]'").

Moreover, there is no evidence that the BOPP Defendants obtained information casting doubt on the validity of the underlying judgment of conviction which should have prompted them to investigate or rectify the situation. For example, this is not a case where the BOPP Defendants ignored repeated protests by Fleming that the arrest and parole revocation proceedings were not supported by a valid judgment of conviction. Indeed, Fleming himself had no knowledge that his judgment of conviction had been vacated. *See Cannon,* 1 F.3d 1558 (noting that "continued detention in the face of repeated protests will deprive the accused of liberty without due process"); *Alexander v. Perrill,* 916 F.2d 1392, 1398 (9th Cir.1990) (holding that prison officials cannot "stand by idly after an inmate has raised the prospect that he is being unlawfully incarcerated and has provided documentary evidence in support of his claim"). There also is no evidence that Fleming apprized any of the BOPP Defendants that he had filed a post-conviction lawsuit or that the BOPP Defendants otherwise were aware of the existence of Fleming's post-conviction proceedings. There is, thus, no evidence which could support an inference that the BOPP Defendants acted with deliberate, reckless indifference, by turning a blind eye to facts before them. *Cf. Jones v. City of Chicago,* 856 F.2d 985, 992–93 (7th Cir.1988) (in order to be personally liable under § 1983, a defendant supervisor must "act either knowingly or with deliberate, reckless indifference," the latter of which includes "turn[ing] a blind eye for fear of what [he] might see").

Undisputedly, the BOPP Defendants were mistaken in their belief that Fleming

was a parolee, but, under the facts of this case, their mistaken belief does not rise to the level of deliberate indifference, absent evidence of actual or constructive knowledge of the federal court's judgment or of other facts triggering a duty to investigate. At most, the BOPP Defendants acted with negligence, resulting in an unintended loss of liberty to Fleming.

Because there is no evidence that either Dowdell, Johnson, Parker, Riddle or White intended to deprive Fleming of his constitutional rights under the Fourteenth Amendment's guarantee of due process of law, the court finds that Fleming cannot establish that these Defendants deprived him of a constitutionally protected liberty interest. The Fourteenth Amendment substantive due process claim, therefore, fails.

(ii) Fourteenth Amendment due process claim predicated on Johnson and Riddle's alleged liability as policymakers

■ Fleming is correct that "liability may be imposed ... from the absence of a policy," *Rivas v. Freeman,* 940 F.2d 1491, 1495 (11th Cir.1991), when a constitutional injury occurs and when the failure to adopt a policy rises to the level of deliberate indifference to the need for such policy. *See City of Canton v. Harris,* 489 U.S. 378, 388–89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (municipal liability) [10]; *Armstrong v. Squadrito,* 152 F.3d 564, 581 (7th Cir.1998) (observing that, "if the supervisor personally devised a deliberately indifferent policy that caused a constitutional injury, then individual liability might flow from that act").

The record establishes that the BOPP does not have a policy in place which re-

---

**10.** *See Southard v. Texas Bd. of Criminal Justice,* 114 F.3d 539, 550 (5th Cir.1997) (cases involving § 1983 municipality liability are instructive because "[t]he legal elements of an individual's supervisory liability and a political subdivision's liability ... are similar enough that the same standards of fault and causation should govern").

quires it to independently investigate the validity of underlying judgments of conviction of state parolees, at least where the BOPP has not been informed of facts which call into doubt the facial validity of said judgments. The evidence further suggests that the BOPP relies on the Department of Corrections for information pertaining to a parolee's release date, including the issuance of court orders directing a parolee's release.[11] (Parker Aff. at 2 (Ex. to Doc. No. 37).) Fleming contends that Johnson and Riddle are policymakers for the BOPP (Doc. No. 68 at 5 & n. 2, citing Johnson Dep. at 17–18), and that, as such, they are liable for "their failure ... to establish reasonable policies and procedures to help ensure that the [BOPP] did not unlawfully imprison or interfere with the liberty of those over whom the [BOPP] had no authority to exercise any such authority." (*Id.* at 5.)

The court, though, finds that this new claim of § 1983 supervisory liability is not properly before the court. Fleming raises it for the first time in his response to the pending motion for summary judgment, *see supra* footnote 9, and Johnson and Riddle have not had an opportunity to address this claim. The allegations in the Second Amended Complaint do not put Riddle and Johnson on notice that they may be subject to § 1983 Fourteenth Amendment liability because they failed to implement a policy which resulted in the deliberate indifference to Fleming's right not to be unlawfully detained. Fleming has not pleaded, by either direct or inferential allegations, that there was an absence of policy under circumstances that allegedly required one, that the absence of

policy was the moving force behind the violation, or that Johnson and Riddle had final policymaking authority to implement such a policy, but failed to do so. Rather, Fleming's claims focus solely on the personal participation of the individual BOPP Defendants in revoking Fleming's parole, not on the presence or absence of policies which allegedly resulted in Fleming's deprivation of liberty.

The court finds that requiring Fleming to identify the policy which he contends should have been implemented by a policymaking official and to plead that the absence of the policy was the moving force behind the alleged constitutional violation is in no way inconsistent with notice pleading. *See Cottone v. Jenne,* 326 F.3d 1352, 1362 & n. 7 (11th Cir.2003) (complaint did not allege the requisite "causal connection" to state a claim for § 1983 supervisory liability where, among other deficiencies, plaintiff did not allege that a policy formulated by a policymaking defendant caused a role in detainee's death); *Cannon,* 1 F.3d at 1565 (upholding dismissal where plaintiff failed to allege "any facts whatsoever to indicate that the alleged violation was a result of a County policy or practice"). The court, therefore, finds that Fleming has failed to set forth a "short and plain statement" as required by Rule 8(a) of the Federal Rules of Civil Procedure.

■ In any event, it does not appear that a § 1983 policymaking claim against Johnson and Riddle would be viable. Whether a government official is a policymaker is a question of state law, *see City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988),

11. The court understands that the BOPP also faults Fleming for not knowing that his federal habeas writ had been granted, but certainly the BOPP Defendants are not saying that the state system relies completely on the detainee to communicate to the appropriate state officials court orders which require his or her release.

and the court "may not assume that final policymaking authority lies in some entity other than that in which state law places it." *McMillian v. Johnson,* 88 F.3d 1573, 1578 (1996). By state statute, the warden of the prison from which the prisoner was paroled, not the BOPP, retains legal custody of the prisoner while the prisoner serves his or her term of parole. *See* Ala.Code § 15–22–26 (1975); *see also Williams v. City of Birmingham,* 41 Ala. App. 208, 133 So.2d 713, 715 (1961) ("a State convict on parole is yet, under the provisions of our pardon and parole statute, in the legal custody of the warden of the prison until the expiration of the term specified in his sentence, and is in effect serving his sentence outside of prison walls"); *cf. Ex parte Powell,* 73 Ala. 517 (Ala.1883) (holding that delivery of pardon to warden (who failed to deliver pardon to his prisoner being held in a county jail) was the same as delivery to the prisoner; "[t]he prisoner was not, it is true, confined in the walls of the penitentiary, but he was in the constructive custody of the warden"); *(see also* Doc. No. 70 at 14.) In the cases cited in the margin, the individual or entity with legal custody of the detainee was the one ultimately held to be accountable under § 1983 for failing to establish policies and procedures adequate to prevent detainees from being held without reason.[12] Neither party has cited any different authority.

▇ Alabama law establishes that Johnson and Riddle, as members of the BOPP, did not have legal custody over Fleming, and there is no evidence that Johnson and Riddle have any control or authority over a warden who is employed by the Department of Corrections. Fleming has not pointed to any state statute or other law, nor has the court found any, which would make Johnson and Riddle answerable for the legality of the custody of a warden's prisoners so as vest policymaking authority in them pertaining to such matters.

### (iii) Fourth Amendment claim predicated on Dowdell's false arrest of Fleming for a parole violation

▇ Fleming also alleges an unlawful arrest claim against Dowdell. (Doc. No. 19 at 1–2.) Unlawful arrest claims are analyzed under the Fourth Amendment.[13] *See Berg v. County of Allegheny,* 219 F.3d

---

**12.** *See, e.g., Luck v. Rovenstine,* 168 F.3d 323 (7th Cir.1999) (Indiana statute provided that "sheriff is the custodian of the persons incarcerated in the jail"; sheriff was "answerable for the legality of their custody" and failure to have procedures in place to verify the identity of prisoners); *Brown v. Byer,* 870 F.2d 975, 980 (5th Cir.1989) (sheriff, as "keeper" of county jail and its prisoners, was required to "adopt reasonable internal procedures to ensure that only those persons are incarcerated for whom the sheriff, or the deputy to whom he delegates such responsibilities, has a good faith belief based upon objective circumstances"); *Williams v. Heard,* 533 F.Supp. 1153, 1160 (S.D.Tex.1982) (failure to release prisoner after return of no-bill by grand jury; sheriff, who by state statute was custodian of jail detainees, liable for failing to adopt procedures "for ensuring that the orders for a prisoner's release that were sent to the central jail records office were ... entered onto a prisoner's jail card, which document is determinative of a prisoner's status in Harris County jail").

**13.** To the extent that Fleming claims he possessed a Fourteenth Amendment due process interest in not being arrested, the claim essentially is a re-characterization of his Fourth Amendment claim and is cognizable only under that amendment. *See Dorsey v. Wallace,* 134 F.Supp.2d 1364, 1373–74 (N.D.Ga.2000) (dismissing plaintiffs' Fourteenth Amendment claim under § 1983 as "redundant of the rights guaranteed by the more specific Fourth Amendment") (citing *Albright,* 510 U.S. at 273–74, 114 S.Ct. 807).

261, 269 (3rd Cir.2000) ("the constitutionality of arrests by state officials is governed by the Fourth Amendment rather than due process analysis").

■ Fleming's unlawful arrest claim is based on the fact that a federal court invalidated the underlying judgment of conviction from which the alleged parole violations arose, thereby divesting Dowdell of legal jurisdiction to arrest Fleming for a supposed parole violation.[14] (*Id.*) Again, though, there is no evidence that, when he secured an arrest warrant for Fleming on charges of parole violations, Dowdell had either actual or constructive knowledge that Fleming's underlying judgment of conviction had been invalidated by a federal court on a writ of habeas corpus. (2nd Am.Compl.¶ 16.)

The issue is whether a Fourth Amendment claim can lie for actions which are neither knowing nor deliberate, but, at best, border on negligent. Whether negligence can establish a Fourth Amendment violation was addressed in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), albeit in the context of a motion to suppress. There, the criminal defendant challenged the veracity of statements police officers made in the affidavit in support of a search warrant. The Supreme Court held that a criminal defendant could challenge a search warrant under the Fourth Amendment if he or she could prove by a preponderance of the

evidence that the affiant had included a material false statement in the warrant application knowingly and intentionally, or with reckless disregard of the truth. *See id.* at 155–56, 98 S.Ct. 2674. The court emphasized, though, that only allegations of deliberate falsehood or of reckless disregard for the truth could support a challenge to the validity of a facially valid warrant: Allegations of "negligence or innocent mistake" would be insufficient to mount a successful Fourth Amendment attack on the warrant and subsequent search. *Id.* at 171, 98 S.Ct. 2674.

Although the Fourth Amendment issue in *Franks* was decided in the context of a criminal suppression hearing, the Eleventh Circuit has extended the *Franks* holding to § 1983 damages claims. *See Maughon v. Bibb County*, 160 F.3d 658 (11th Cir. 1998). In *Maughon*, ruling that officers did not violate the Fourth Amendment in executing a search warrant, the Eleventh Circuit held that "[n]egligent or innocent mistakes do not violate the Fourth Amendment." *Id.* at 660 (citing *Franks*, 438 U.S. at 171, 98 S.Ct. 2674). "To invalidate a warrant based on incorrect information provided in a supporting affidavit one must show that officers intentionally or recklessly included false information or omitted necessary true information." *Id.* (citing *Franks*, 438 U.S. at 171, 98 S.Ct. 2674); *see also Kelly v. Curtis*, 21 F.3d 1544, 1554 (11th Cir.1994) (recognizing that the holding in *Franks* "does not apply to *negligent*

14. The court observes what Fleming says he is *not* claiming. In his Response, Fleming emphasizes that he does not base his constitutional claims against Dowdell on allegations pertaining to procedural inadequacies in the parole revocation process. For instance, Fleming states that he does not seek to hold Dowdell liable for his actions in "reporting alleged parole violations," for his conduct "as a witness in parole court proceedings," or for

Dowdell's supervision of Fleming while Fleming was on parole. (Doc. No. 19 at 1–2.) Nor does Fleming base his claim on allegations that Dowdell "failed to afford [Fleming] due process after charging him with parole violations." (*Id.* at 2.) Indeed, for purposes of this lawsuit, Fleming has not disputed that he committed the acts of which he was charged, i.e., positive drug test and nonpayment of restitution.

misrepresentations or omissions"); *Ansley v. Heinrich,* 925 F.2d 1339, 1344 (11th Cir.1991) (holding that negligence, alone, absent any intentional government conduct, cannot form the basis of a claim under § 1983 premised on the Fourth Amendment).

It follows from the foregoing cases that some showing of deliberate or intentional misconduct is required to state a Fourth Amendment claim against a parole officer who wrongfully, without jurisdiction, secures a parole violation warrant and arrests a citizen who is no longer a parolee. For the same reasons discussed in the preceding section, there is no evidence from which the court can imply any deliberate misconduct on the part of Dowdell. It is undisputed that Dowdell did not know that Fleming was no longer a parolee by virtue of the vacated judgment of conviction. There is no evidence that Dowdell received information that the validity of the facially-valid judgment of conviction was in doubt. The court finds that Dowdell's lack of knowledge precludes a finding that he acted deliberately or intentionally. Fleming, therefore, cannot prevail as a matter of law on his § 1983 Fourth Amendment false arrest claim against Dowdell.

### (c) Quasi–Judicial Immunity

Because Fleming has failed to establish the existence of a constitutional violation under either the Fourth or Fourteenth amendments, the court need not examine the immunity defenses raised by the BOPP Defendants. Nonetheless, to clarify some of Fleming's misconceptions, the court does so. For the reasons to follow, even assuming that a Fourth Amendment or Fourteenth Amendment claim could be extracted from the evidence, the court finds that Johnson, Parker, Riddle and White would be entitled to quasi-judicial immunity. Because the analyses are slightly different, the court discusses the application of quasi-judicial immunity, first, as to Johnson, Riddle and White and, second, as to Parker.

#### (i) Johnson, Riddle and White

In suits brought under 42 U.S.C. § 1983, "[i]t is well-established that judges are immune from liability for damages for acts committed within their judicial jurisdiction." *Stewart v. Baldwin County Bd. of Educ.,* 908 F.2d 1499, 1507 (11th Cir.1990) (citing *Cleavinger v. Saxner,* 474 U.S. 193, 199, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985), and *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)). The Supreme Court of the United States has extended judicial immunity to certain executive and administrative personnel whose duties are "classically adjudicatory." *Id.* (quoting *Cleavinger,* 474 U.S. at 201–04, 106 S.Ct. 496).

■ To determine whether Johnson, Riddle and White are entitled to quasi-judicial immunity, the court turns to the principles delineated in *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), the seminal case regarding the scope of judicial immunity as to lawsuits under § 1983. *See id.* at 360, 98 S.Ct. 1099. Because judicial immunity is an immunity from suit, not just immunity from damages liability, "[a] judge will not be deprived of immunity because the action he [or she] took was in error, was done maliciously, or was in excess of his [or her] authority." *Id.* at 356–57, 98 S.Ct. 1099 (citation and internal quotations omitted); *see also Pierson,* 386 U.S. at 554, 87 S.Ct. 1213 ("[I]mmunity applies even when the judge is accused of acting maliciously and corruptly."). Rather, a judge will be

deprived of judicial immunity in only two scenarios. First, a judge loses immunity for actions not taken in the judge's judicial capacity. *See Stump*, 435 U.S. at 360–63, 98 S.Ct. 1099. Second, a judge is not immune, even when he or she performs judicial actions, if he or she "has acted in the clear absence of all jurisdiction." *Id.* at 356–57, 98 S.Ct. 1099.

■ Fleming does not dispute that Johnson, Riddle and White acted in a quasi-judicial, adjudicatory capacity when they made factual and legal findings that he engaged in the conduct for which he was charged, and for good reason.[15] Rather, Fleming focuses on the fact that, in revoking Fleming's parole, they acted on an underlying judgment which had been vacated. Because the underlying judgment had been invalidated, Fleming asserts that Johnson, Riddle and White acted "without lawful authority" (Doc. No. 30 at 6; Doc. No. 68 at 3), and, thus, "in the clear absence of all jurisdiction." *Stump*, 435 U.S. at 356–67, 98 S.Ct. 1099.

Johnson, Riddle and White, on the other hand, disagree with Fleming's interpretation of the phrase "in the clear absence of all jurisdiction." They do not dispute that they lacked personal jurisdiction over Fleming to revoke his parole once the federal district court granted Fleming's writ of habeas corpus and vacated Fleming's underlying judgment of conviction. Johnson, Riddle and White, though, assert that, because they were unaware of the facts divesting them of personal jurisdiction and, further, because they otherwise acted within their subject matter jurisdiction, they did not act "in the clear absence of all jurisdiction." (Doc. No. 57 at 8–9.) For the reasons to follow, the court agrees with Johnson, Riddle and White.

For purposes of judicial immunity, there is a distinction between an "excess of jurisdiction" and a "clear absence of all jurisdiction." There also is a distinction between the clear absence of personal jurisdiction and the clear absence of subject matter jurisdiction. Only judicial acts performed in the clear absence of all jurisdiction over the subject matter are not protected by judicial immunity. *Stump, supra,* and *Dykes v. Hosemann,* 776 F.2d 942, 943–45 (11th Cir.1985), illustrate the distinctions.

*Stump* considered the immunity defense raised by Harold D. Stump, a circuit court judge in the state of Indiana. Judge Stump ordered a "somewhat retarded" child to undergo a tubal ligation at the request of her mother. 435 U.S. at 351, 98 S.Ct. 1099. The court of appeals' held that Judge Stump "did not have jurisdiction over the petition authorizing [the child's] sterilization," and, thus, acted in the clear absence of all jurisdiction. *Id.* at 357, 98

---

15. Parole board members are entitled to judicial immunity when they perform adjudicatory functions in connection with granting, denying or revoking parole. *See Sultenfuss v. Snow,* 894 F.2d 1277, 1279 (11th Cir.1990) (per curiam) ("[W]e have long recognized that parole board members are entitled to quasi-judicial immunity from suits requesting damages based upon the decision to grant or withhold parole.") (citing *Fuller v. Georgia State Bd. of Pardons and Paroles,* 851 F.2d 1307, 1310 (11th Cir.1988)); *Cruz v. Skelton,* 502 F.2d 1101, 1101–02 (5th Cir.1974) (holding that a state's board of pardons and paroles is entitled to absolute immunity in refusing parole to a prisoner because the board performs adjudicatory roles which are the functional equivalent of judges); *see also Walrath v. United States,* 35 F.3d 277 (7th Cir. 1994) ("Most federal courts ... have consistently held that parole board members are absolutely immune from suit for their decisions to grant, deny, or revoke parole.").

S.Ct. 1099. The Supreme Court reversed. It stated, though, that the court of appeals "correctly" identified the issue as "whether at the time he [Judge Stump] took the challenged action he had jurisdiction over the subject matter before him." *Id.* at 357, 98 S.Ct. 1099. The Supreme Court held that, even though Judge Stump's ruling may have been contrary to the common law of the state and in violation of due process, the judge had not exceeded the general jurisdiction of the court. "A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." *Id.* at 359, 98 S.Ct. 1099. Quoting precedent, the Court reiterated:

> "Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend."

*Stump,* 435 U.S. at 356 n. 6, 98 S.Ct. 1099 (quoting *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1871)).

Borrowing examples from *Bradley,* the court explained that a probate judge who presides over a criminal trial acts in the clear absence of all jurisdiction, but a judge of a criminal court who convicts a defendant for a non-existent crime acts only in excess of jurisdiction and is pro-

tected by judicial immunity. *See Stump,* 435 U.S. at 357 n. 7, 98 S.Ct. 1099 (citing *Bradley,* 80 U.S. at 352); *see also Duty v. City of Springdale,* 42 F.3d 460, 462 (8th Cir.1994) (quotations omitted) ("a judge acts in excess of jurisdiction if the act complained of is within his general power of jurisdiction but is not authorized because of certain circumstances," whereas there "is a clear absence of jurisdiction when a court of limited jurisdiction attempts to adjudicate a case outside of its jurisdiction").

Moreover, in *Dykes,* a mother alleged that her ex-husband and two Florida state court judges conspired to deprive her of custody of her child without due process. *See* 776 F.2d at 943–45. One of the judges, Judge Hosemann, signed a petition which falsely declared the child to be a "dependent child." Judge Hosemann then awarded the father with temporary custody of the child. The plaintiff-mother did not receive notice of the dependency and temporary custody proceedings, as required by statute. *See id.* at 943–44 & 948 n. 19.

After rejecting the plaintiff-mother's argument that the judge acted in the clear absence of all subject matter jurisdiction, *see id.* at 947, the court turned to the plaintiff-mother's assertion that Judge Hosemann "acted in 'the clear absence of all jurisdiction' because he lacked … jurisdiction over [her] person[ ]." *Id.* at 946. The Eleventh Circuit disagreed, concluding that *Stump's* and *Bradley's* references to a "clear absence of all jurisdiction" only pertained to the clear absence of *subject matter* jurisdiction:

> Although the [*Stump* ] Court referred to jurisdiction in general terms, the context of the statement indicates that the Court was referring to a complete absence of

subject matter jurisdiction. The passage itself cited to a footnote in which the Court presented an example of a lack of subject matter jurisdiction. More importantly, the language in *Bradley* from which *Stump* quotes, more fully reads "clear absence of all jurisdiction over the subject matter." *Bradley v. Fisher*, 80 U.S. (13 Wall.) at 351 (emphasis added).

*Dykes*, 776 F.2d at 947–48 (citing *Stump*, 435 U.S. at 356–57, 98 S.Ct. 1099) (internal footnote omitted).

The *en banc* court in *Dykes* then held that, where a judge does not clearly lack subject matter jurisdiction, the absence of personal jurisdiction over the complaining party does not deprive the judge of immunity. *See id.* at 948–49. "[T]o require a judge to defend a charge that he knowingly entered an order adversely affecting a party over whom the court had not acquired personal jurisdiction would be to ignore the still valid policy considerations articulated by the Supreme Court in *Bradley v. Fisher*," *supra. Id.* at 950; *see also Ashelman v. Pope*, 793 F.2d 1072, 1076 (9th Cir.1986) (judicial immunity may not be pierced for lack of personal jurisdiction).

■ Applying these principles, the court finds that Johnson, Riddle and White acted within their general subject matter jurisdiction. They are statutorily vested with the authority to conduct parole revocation hearings and to revoke parole. *See* Ala.Code § 15–22–24(a) (1975) (BOPP's duties, among others, include "determining whether violation of parole . . . conditions exist in specific cases, deciding, in the case of parolees, what action should be taken with reference thereto."); *see also* Ala. Code § 15–22–32(a) (1975) (authorizing a single member of BOPP to conduct a parole violation hearing "to determine guilt or innocence of the charges" to "recommend to the board revocation . . . of parole").

It is true that at the time Johnson, Riddle and White acted Fleming was no longer a parolee based on the grant of his habeas corpus writ. The court finds that the fact Fleming's judgment had been vacated meant that these Defendants did not have authority over Fleming's person when they acted. In other words, Johnson, Riddle and White were divested of personal jurisdiction over Fleming. Under *Dykes, supra*, the absence of personal jurisdiction, however, does not preclude the application of judicial immunity.

The court's analysis is not complete, though. Alternatively, to the extent that an argument could be made that Johnson, Riddle and White committed more than a "purely procedural" error in revoking Fleming's parole when, in fact, Fleming was no longer a parolee, so as to categorize their actions as depriving them of subject matter jurisdiction, *Dykes*, 776 F.2d at 947 n. 17, the court finds that they nonetheless would be entitled to absolute judicial immunity.

To explain, in a portion of the panel decision in *Dykes* which remains undisturbed by the *en banc* court, the Eleventh Circuit held that to deprive a judicial officer of absolute immunity, he or she must *know* facts which place him or her on notice of the clear absence of subject matter jurisdiction: "[I]mmunity for judicial acts in the clear absence of jurisdiction is lost only if the judge knows that he lacks jurisdiction." *Dykes v. Hosemann*, 743 F.2d 1488, 1497 (11th Cir.1984); *see also Bradley*, 80 U.S. at 351 ("Where there is clearly no jurisdiction over the subject-

matter any authority exercised is a usurped authority, and for the exercise of such authority, *when the want of jurisdiction is known to the judge,* no excuse is permissible.") (emphasis added); *Tucker v. Outwater,* 118 F.3d 930, 934 (2d Cir.1997) ("A judge will be denied immunity for damages where he (i) acts in the clear absence of all jurisdiction; and (ii) knew or must have known that he was acting in such a manner.") (quoting *Maestri v. Jutkofsky,* 860 F.2d 50, 53 (2d Cir.1988)).

Neither Johnson, Riddle nor White was enlightened to the fact that Fleming's conviction had been invalidated. They had no knowledge, either actual or constructive, and had received no information placing on them a duty to investigate the judgment's validity. They acted unknowingly. Thus, whether the absence of jurisdiction is categorized as a clear lack of personal jurisdiction or a clear lack of subject matter jurisdiction, Johnson, Riddle and White are entitled to absolute quasi-judicial immunity and, therefore, are not liable to Fleming on the § 1983 constitutional claims.

### (ii) Parker

As stated, Parker also invokes quasi-judicial immunity. (Doc. No. 37 ¶ 2; Doc. No. 57 at 7.) Although Parker's role in Fleming's revocation proceedings differs from that of Johnson, Riddle and White, the court finds that Parker is protected by the same quasi-judicial immunity. Namely, for the reasons to follow, the court finds that Parker's involvement in Fleming's parole revocation was "classically adjudicatory" in nature, *Stewart,* 908 F.2d at 1507, and that Parker did not act "in the clear absence of all jurisdiction." *Stump,* 435 U.S. at 356–57, 98 S.Ct. 1099.

██ First, the court finds that Parker's determination that there existed rea-

sonable cause to believe that Fleming violated the conditions of his parole so as to support the issuance of a warrant places Parker in a position akin to a judicial or magisterial role. *See, e.g.,* Fed.R.Crim.P. 41(b)(1) & (d)(1) (authorizing a magistrate judge to issue a search warrant "for search of property or for a person within the district" where probable cause exists). A magistrate judge performs a judicial act when he or she makes decisions pertaining to issuing search warrants. *See Pressly v. Gregory,* 831 F.2d 514, 517 (4th Cir.1987) ("As judicial officers, magistrates are entitled to absolute immunity for acts performed in their judicial capacity."); *Vaillancourt v. Bentsen,* 1994 WL 243489, *1 (D.Ariz.1994) (finding that a magistrate judge's issuance of search warrant was a judicial act for which magistrate judge was immune from suit under doctrine of absolute judicial immunity) (citing *Stump,* 435 U.S. at 349, 98 S.Ct. 1099). The court finds that Parker engaged in a similar judicial act when he exercised his statutory duty and determined that there was "reasonable cause to believe" that Fleming had violated the conditions of his parole. *See* Ala.Code § 15–22–31(a) (1975) ("If ... any member of the [BOPP] shall have reasonable cause to believe that such prisoner ... has violated the conditions of his parole in an important respect, such ... board member shall report such fact to the Department of Corrections, which shall thereupon issue a warrant for the retaking of such prisoner....").

This court is not the first to analogize the job of a non-judicial officer's role in assessing legal grounds for the issuance of a warrant to that of a judicial officer for purposes of determining the applicability of absolute quasi-judicial immunity. In *Nesmith v. Alford,* 318 F.2d 110, 127 (5th Cir.1963), cited by Parker (Doc. No. 70 at

11), the Fifth Circuit held that the role of a police desk captain in reviewing an experienced police officer's affidavit to determine whether legal grounds existed to issue an arrest warrant was comparable to that of a magistrate: "Captain Eiland was acting in the role of a Magistrate" because "[h]is function was to determine whether legal grounds existed for an arrest and prosecution." *Id.* As such, the police desk captain was entitled to quasi-judicial immunity. *Id.* Similarly, because Parker made an assessment of "reasonable cause," a role analogous to the job of a magistrate, the court finds that Parker engaged in a judicial function.

Second, because Parker is statutorily authorized to make "reasonable cause" determinations concerning violations of parole, Ala.Code § 15–22–31 (1975)(a), the court finds that Parker acted within his general subject matter jurisdiction. Finally, for the reasons discussed in the preceding section, the court finds that Parker's undisputed lack of either actual or constructive knowledge that Fleming's underlying judgment of conviction had been vacated mandates a finding that Parker did not act "in the clear absence of all jurisdiction." *Stump,* 435 U.S. at 356–57, 98 S.Ct. 1099. Parker, therefore, having satisfied the *Stump* requirements, is entitled to absolute quasi-judicial immunity on the § 1983 claims against him.

#### (d) Qualified Immunity: Dowdell

Dowdell asserts that quasi-judicial immunity and qualified immunity protect him from individual liability as to Fleming's § 1983 constitutional claims. For the reasons to follow, the court finds that summary judgment is appropriate, not only on the merits as discussed, *supra,* but also on the basis of qualified immunity.[16]

Government officials may raise qualified immunity as an affirmative defense to a § 1983 individual-capacity lawsuit. *See Wilson v. Strong,* 156 F.3d 1131, 1135 (11th Cir.1998); *see also Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1184 n. 16 (11th Cir.1994). Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established ... constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Rich v. Dollar,* 841 F.2d 1558, 1563 (11th Cir. 1988).

The test for whether a governmental defendant is entitled to qualified immunity involves a two-step analysis. The first inquiry concerns whether the government official was engaged in a "discretionary

---

**16.** The court declines to decide whether Dowdell is entitled to quasi-judicial immunity. The court notes, though, that Fifth Circuit's decision in *Spaulding v. Nielsen,* 599 F.2d 728, 729 (5th Cir.1979), as interpreted by *Galvan v. Garmon,* 710 F.2d 214, 215 (5th Cir.1983), and the Alabama Civil Court of Appeals' decision in *McCammon v. Youngblood,* 853 So.2d 249, 252–53 (Ala.Civ.App. 2002), appears to undermine Dowdell's assertion of absolute immunity. *See, e.g., McCammon,* 853 So.2d at 252–53 (declining to extend absolute immunity to parole officer who was sued under § 1983 lawsuit for allegedly causing prisoner to be illegally jailed by charging him with using illegal drugs without first conducting a drug screen on the ground that the Eleventh Circuit had not extended absolute immunity for parole officers to fact situations other than submission of a presentence report); *see also A.M. v. Grant,* 889 F.Supp. 1495, 1504 (M.D.Ala.1995), aff'd, 68 F.3d 486 (11th Cir.1995) (concluding that *Spaulding* and *Galvan* preclude grant of absolute immunity in § 1983 lawsuit to any actions of a probation officer which do not involve the filing of a petition).

function." *Madiwale,* 117 F.3d at 1324. It is undisputed, and in fact alleged by Fleming, that Dowdell at all relevant times was acting within the scope of his employment as a state parole officer. Accordingly, the court finds that Dowdell "was acting within the scope of his discretionary authority" when the alleged unconstitutional acts occurred. *Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir.1983).

Under the second inquiry, the burden shifts to Fleming. First, as a "threshold question," the court asks, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show [the government official's] conduct violated a constitutional right?" *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Second, if under Fleming's version of the facts, his constitutional rights would have been violated, the court must determine whether those rights were "clearly established." *Id.* This inquiry focuses on whether the "state of the law" at the time of the alleged violation provided the government officials with "fair warning that their alleged treatment of the [plaintiff] was unconstitutional." *Hope v. Pelzer,* 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).

As stated, Fleming cannot demonstrate that Dowdell violated Fleming's Fourth Amendment or Fourteenth Amendment rights because Dowdell did not possess the requisite state of mind to impose liability. In short, Dowdell did not have actual or constructive knowledge that Fleming's underlying judgment of conviction had been vacated. Nor was Dowdell apprised of facts giving rise to a duty to investigate the validity of Fleming's judgment. Dowdell, therefore, did not act knowingly, intentionally or with deliberate indifference so as to impose liability under either the Fourth or Fourteenth amendments. At this point, the court observes that, in each case it found where summary judgment was denied to state officials who retained inmates in spite of court orders mandating their release, the offending state official knew of the court order, yet refused to comply with it.[17] These decisions, cited in the margin, further demonstrate that Dowdell did not violate the Constitution and that his unknowing mistake that he lacked jurisdiction over Fleming entitles him to qualified immunity. In other words, because Fleming's parole conditions and incarceration were not wrongly extended based on a knowing and deliberate refusal to obey a court order, Dowdell is qualifiedly immune from a damages suit in his individual capacity.

■ Assuming, though, the existence of a constitutional violation, the court finds

---

**17.** *See, e.g., Slone v. Herman,* 983 F.2d 107, 109–10 (8th Cir.1993) (holding that state department of correction employees deprived the prisoner of his liberty interest in violation of the due process clause of the Fourteenth Amendment and were not entitled to qualified immunity, when they *intentionally* refused to comply with a court order on the basis that they believed that the state court had erroneously interpreted a statute in ordering the prisoner's release); *Tasker v. Moore,* 738 F.Supp. 1005, 1010 (S.D.W.Va.1990) ("It is peradventure that officials who *willfully, intentionally or recklessly* keep an inmate in prison past the date he was ordered released are liable under section 1983 for infringing upon the inmate's personal liberty protected by the substantive due process clause of the Fourteenth Amendment.") (emphasis added); *Arce v. Miles,* 1991 WL 123952, *9 (S.D.N.Y. 1991) ("[A] state official's *knowing* refusal to obey a state court order affecting a prisoner's rights would make the official 'liable under § 1983 for infringing upon the inmate's personal liberty protected by the substantive due process clause of the Fourteenth Amendment.' ") (emphasis added).

that the parameters of the law were not sufficiently defined during the relevant time period so as to provide "fair warning" to Dowdell that he had an obligation to verify the validity of Fleming's underlying judgment of conviction where he was unaware of the federal court's order or that Fleming had even challenged the validity of the judgment of conviction in a habeas corpus proceeding. *Hope*, 536 U.S. at 741, 122 S.Ct. 2508; *cf. Kelly*, 21 F.3d at 1551 (holding that there was no law clearly establishing that "an officer has an affirmative obligation to seek out exculpatory information of which the officer is *not aware* ").

### (e) 42 U.S.C. § 1983 and the Statute of Limitations

Dowdell, Johnson, Parker, Riddle and White also raise the statute of limitations as a defense to Fleming's § 1983 claims. (Doc. No. 15 at 5; Doc. No. 24 at 5; Doc. No. 35 at 5; Doc. No. 37 at 5.) Fleming counters that equitable tolling applies to his otherwise untimely claims. (Doc. No. 19 at 7–9.) For the reasons to follow, the court agrees with these Defendants that the untimeliness of Fleming's § 1983 claims provides yet another ground for the entry of summary judgment in favor of Defendants.

 The statute of limitations for a § 1983 claim arising out of events occurring in Alabama is two years. *See Lufkin v. McCallum*, 956 F.2d 1104, 1106 (11th Cir.1992). The last act committed by Dowdell occurred on January 12, 2000, the date Dowdell arrested Fleming for violating the conditions of his parole. The last act committed by Parker occurred in January or February 2000 when Parker reviewed Dowdell's report charging Fleming with violating conditions of parole. (Par-

ker Aff. at 1 (Ex. to Doc. No. 37).) The last act by White was on or about January 26, 2000, the date she, acting as a parole court hearing officer, conducted a fact-finding hearing on Fleming's alleged parole violation and recommended to the BOPP that Fleming's parole be revoked. (*See* form titled, "Action of the Board Subsequent to Parole Court" (Doc. No. 59, Ex. 10).) The last act by Riddle and Johnson occurred on March 8, 2000, when they revoked Fleming's parole upon White's recommendation. (Doc. No. 59, Ex. 10.)

Each act recited above occurred during the year 2000. More than two years passed between 2000, and the filing of Fleming's Complaint in this case on November 24, 2003. The two-year statute of limitations, therefore, has run on Fleming's § 1983 claims against these Defendants.

Moreover, the court finds that equitable tolling cannot save Fleming's claims. Fleming relies on his lack of actual notice that his habeas petition had been granted and his judgment of conviction vacated. Fleming avers that the statute of limitations should not begin to accrue, or should be tolled, until August 13, 2003. (*See, e.g.,* Doc. No. 19 at 5–9.) August 13, 2003, is the date the United States District Court in the Northern District of Alabama answered Fleming's inquiry about the status of his habeas corpus petition by ordering that Fleming "be RELEASED FORTHWITH from incarceration." (Ex. to Compl., Aug. 12, 2003 Order at 1.)

 Although Fleming did not have actual notice of the federal court's judgment vacating his judgment of conviction, he is charged with constructive knowledge of the district court's final judgment because he was a party to those proceedings.

*See Salahuddin,* 781 F.2d at 27. Equitable tolling is not warranted in cases where the plaintiff has constructive notice. *See Pedraza v. United Guar. Corp.,* 114 F.Supp.2d 1347, 1354 (S.D.Ga.2000) (setting forth factors plaintiff must satisfy to qualify for protection of equitable tolling).

Additionally, Fleming has not presented any evidence that he acted diligently in ascertaining the status of his habeas corpus case. Without evidence of diligence on the part of Fleming, equitable tolling cannot save his claims. *Cf. Drew v. Dept. of Corr.,* 297 F.3d 1278, 1288 (11th Cir.2002) ("A lengthy delay between the issuance of a necessary order and an inmate's receipt of it might provide a basis for equitable tolling if the petitioner has diligently attempted to ascertain the status of that order and if the delay prevented the inmate from filing a timely federal habeas corpus petition."); *Woodward v. Williams,* 263 F.3d 1135, 1143 (10th Cir.2001) ("[A] prisoner's lack of knowledge that the state courts have reached a final resolution of his case can provide grounds for equitable tolling if the prisoner has acted diligently in the matter.").

■■■ Fleming failed to keep the district court in the Northern District of Alabama apprized of his current address. The court records in Fleming's habeas corpus case reflect that the last change of address Fleming provided was in March 1997.[18] (Pl. Not. Change of Address (Doc. No. 54, Ex. 3).) After that date, Fleming did not have any contact with the court or make any effort until July 27, 2003, to inquire

about the status of his § 2255 petition. A six-year lapse does not equate due diligence. The court, therefore, finds that the two-year statute of limitations is a bar to Fleming's 42 U.S.C. § 1983 constitutional claims against the BOPP Defendants.

### 2. State Law Claims for False Imprisonment

#### (a) Dowdell, Johnson, Parker, Riddle and White

Counts 2 and 4 allege state law claims for false imprisonment against Dowdell, Parker, Johnson, Riddle and White. The BOPP Defendants move for summary judgment on Counts 2 and 4 on the basis of State-agent immunity. (Doc. No. 58 at 2, 11.) Pointing to the exceptions to State-agent immunity outlined in *Ex parte Cranman,* 792 So.2d 392 (Ala.2000), Fleming contends that the BOPP Defendants cannot seek the shelter of State-agent immunity because they acted beyond legal authority and in violation of the United States Constitution when they revoked Fleming's non-existent parole. *Id.* at 405.

In *Ex parte Cranman,* 792 So.2d 392 (Ala.2000), a plurality opinion which was later adopted by a majority of the Supreme Court of Alabama in *Ex parte Butts,* 775 So.2d 173 (Ala.2000), the Supreme Court "restate[d] the rule governing State-agent immunity." *Cranman,* 792 So.2d at 405. It held:

A State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis

---

18. Plaintiff's self-serving, conclusory speculation that he notified the court of his change of address when he was paroled (Pl. Dep. at 31 (Doc. No. 54)) does not dictate a contrary finding. *See Douglass v. United Serv. Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir.1996)

("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden."); *Bennett v. Parker,* 898 F.2d 1530, 1533–34 (11th Cir. 1990) (A "conclusory allegation" cannot defeat summary judgment.).

of the claim against the agent is based upon the agent's

(1) formulating plans, policies, or designs; or

(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:

(a) making administrative adjudications;

(b) allocating resources;

(c) negotiating contracts;

(d) hiring, firing, transferring, assigning, or supervising personnel; or

(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or

(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or

(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.

*Id.* (emphasis in original). After setting forth the type of conduct which entitles a state official to immunity, the court set out the exceptions to State-agent immunity as follows:

Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent *shall not* be immune from civil liability in his or her personal capacity

(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or

(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Id.* (emphasis in original).

When a defendant raises State-agent immunity, courts apply the *Cranman* rule through a two-part burden-shifting analysis. *See Giambrone v. Douglas*, 874 So.2d 1046, 1052 (Ala.2003). "In order to claim State-agent immunity, [the BOPP Defendants] bear the burden of demonstrating that [Fleming's] claims arise from a function that would entitle them to immunity." *Id.* If the BOPP Defendants satisfy their burden, "the burden then shifts to [Fleming], who, in order to deny the [BOPP Defendants] immunity from suit, must establish that [they] acted willfully, maliciously, fraudulently, in bad faith, [ ] beyond their authority," contrary to the requirements of the United States Constitution, *id.* or that they were " 'not exercising [their] . . . judgment in the manner set forth in the examples in *Cranman.*' " *Quinlan v. Jones*, 922 So.2d 899, 907 (Ala.Civ.App.2004) (citation omitted).

Applying the two-part analysis, the court first examines whether the conduct forming the basis of Fleming's false imprisonment claim fits within one of the categories of the *Cranman* standard. Defendants Dowdell, Johnson, Parker, Riddle and White assert that, within the meaning of *Cranman*, they were exercising their

judgment in making "administration adjudications" and were "discharging duties imposed on [their] agency by statute." (Doc. No. 58 at 11, citing subsections (2)(a) and (3) of the *Cranman* rule.) Because subsections (2) and (3) of *Cranman* require the court to ascertain whether the BOPP Defendants exercised judgment, "cases applying the discretionary/ministerial dichotomy are helpful." *Swan v. City of Hueytown,* 2004 WL 2488342, at *3 (Ala.2004). The Supreme Court of Alabama "has defined discretionary functions as 'those acts as to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances.'" *Id.* (quoting *Wright v. Wynn,* 682 So.2d 1, 2 (Ala. 1996)).

■ Fleming does not take issue with the general statutory authority of the BOPP Defendants to effectuate an arrest of a parolee for parole violations, to render decisions concerning guilt or innocence on those charges, or to revoke parole. In that regard, Fleming does not dispute that each of the BOPP Defendants discharged his or her statutory duties and exercised his or her judgment in determining whether grounds existed to believe that Fleming

had violated the conditions of his parole. Instead, as stated, Fleming relies on the *Cranman* exceptions to liability.

First, Fleming claims that the BOPP Defendants acted "beyond their authority" because the underlying judgment of conviction from which the parole violations stemmed had been vacated. Because Fleming was no longer a parolee, by virtue of the vacated judgment of conviction, the BOPP Defendants did not have jurisdiction over Fleming's person and, therefore, Fleming argues that, within the meaning of *Cranman, supra,* they acted beyond their lawful authority in subjecting him to the parole revocation procedures.[19] (Doc. No. 62 at 8–9 (citing *Ex parte Phelps,* 612 So.2d 1177, 1181 (Ala.1992), in which the Supreme Court of Alabama observed that "all of the general duties enumerated in the general provision outlining the duties of the Board, Ala.Code 1975, § 15–22–24, *presuppose a conviction.*").) Furthermore, Fleming contends that the BOPP Defendants' erroneous belief that they had jurisdiction over Fleming does not shelter them from a finding that they acted "beyond their authority" in restricting his liberty through supervision on parole and incarcerating him on parole violations. (*Id.* at 10–11.) For the reasons to follow, the court disagrees with Fleming.[20]

---

**19.** Again, Fleming does not dispute that neither Dowdell, Johnson, Parker, Riddle nor White knew that the judgment of conviction had been vacated. Presumably, for that reason, Fleming has not argued that the BOPP Defendants acted "willfully, maliciously, fraudulently" or "in bad faith." *Cranman,* 792 So.2d at 405.

**20.** The court takes the opportunity to correct a related misconception by Fleming. Fleming is correct that the BOPP Defendants' lack of knowledge of the existence of the district court's final judgment, which in effect divested them of jurisdiction over Fleming's person,

does not prevent Fleming from stating a cause of action for false imprisonment. As codified by the Code of Alabama, the tort of false imprisonment "consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." Ala.Code § 6–5–170 (1993). To satisfy the statutory requirements for false imprisonment, one only need allege (1) a detention (2) which is unlawful. *See id.* "The lack of malice, the presence of good faith, or the presence of probable cause do not affect the existence of wrong, for purposes of a false imprisonment cause, when the detention is unlawful." *Nesmith v. Alford,* 318

*Howard v. City of Atmore*, 887 So.2d 201 (Ala.2003), is instructive on the issue of whether the BOPP Defendants acted outside the scope of their authority. In *Howard*, a wrongful-death action, an inmate in the custody of a city police department, committed suicide. *See* 887 So.2d at 202. The administratrix of the decedent's estate alleged that the jailer who was on duty when the inmate died " 'failed to implement reasonable precautionary measures' " to prevent the death. *See id.* at 203.

Turning to the *Cranman* exceptions to State-agent immunity, the *Howard* court stated that "[a] State agent acts beyond authority and is therefore not immune when he or she 'fail[s] to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.' " *Id.* at 208 (quoting *Giambrone*, 874 So.2d at 1052); *see Atmore*, 887 So.2d at 208 (same). The jailer violated an administrative order which mandated that the jailer check on all inmates "at least twice an hour" and maintain "constant" observation of the inmates via a "monitor camera." *Id.* at 207–08. The administrative order in question did "not turn on the subjective observations or assessments of individual inmates or contemplate the exercise of judgment by individual jailers," but rather applied to all inmates regardless of wheth- er or not they were "at-risk." *Id.* at 207–08. It "left no room for the exercise of judgment as to the manner in which or the frequency with which [the jailer] should be monitored." *Id.* at 208–09. The court, therefore, held that the jailer acted beyond his authority because he failed to "monitor" the inmate "in the manner prescribed in" the administrative order on the day in question; thus, he was not entitled to State-agent immunity. *Id.*

█ Under *Howard*, a state official acts "beyond his or her authority" when there exists a binding rule, regulation or statute which contains unambiguous and specific directives with which a state official must comply. Such explicit directives take away a state official's exercise of discretion and the failure of a state official strictly to abide by the directives results in a finding that the state official acted beyond his or her authority. Other Alabama cases have applied the "beyond his or her authority" exception to State-agent immunity in the same manner as *Howard*. *See Giambrone*, 874 So.2d at 1049 (high school wrestling coach acted beyond his authority and, thus, was not entitled to State-agent immunity when, he violated detailed guidelines prescribing weight classes and permissible wrestling moves for wrestling matches); *see also Ex parte Hayles*, 852

F.2d 110, 119 (5 th Cir.1963) (applying Alabama law); *see also R.J.D. v. Vaughan Clinic, P.C.*, 572 So.2d 1225, 1230 (Ala.1990) (Adams, J., dissenting). Seizing on the language in *Nesmith* (*see, e.g.*, Doc. No. 44 at 5), Fleming argues that the BOPP Defendants' lack of knowledge is not a defense. Fleming, however, confuses what is required to state a cause of action with the elements of the affirmative defense of State-agent immunity. Immunity was not at issue in *Nesmith*. *See Norton v. McShane*, 332 F.2d 855, 860 n. 6 (5th Cir.1964) ("In *Nesmith* immunity was not raised as a defense except as to one quasijudicial officer, who was in fact held to be immune."). Whether the BOPP Defendants are entitled to State-agent immunity is a separate inquiry. *See e.g.*, *Lightfoot v. Floyd*, 667 So.2d 56 (Ala.1995) (police investigator detaining plaintiff for questioning was exercising a discretionary function and, therefore, immune from liability on false imprisonment claim). *See, e.g., Rose v. Town of Jackson's Gap*, 952 F.Supp. 757, 766–67 (M.D.Ala.1996) (police officer entitled to substantive immunity on state law false imprisonment claim when he responded in uniform to domestic dispute call and arrested one of arguing parties for disorderly conduct).

So.2d 117, 121–22 (Ala.2002); *Ala. Dept. of Corrections v. Thompson,* 855 So.2d 1016, 1020–21 (Ala.2003) (warden not entitled to State-agent immunity because he acted beyond his authority in violating an administrative regulation).

The court finds that, contrary to Fleming's argument, the fact that his final judgment of conviction had been vacated, in and of itself, does not equate a finding that the BOPP Defendants acted beyond their authority. To deny the BOPP Defendants State-agent immunity, Fleming must point to a statute, rule or regulation which imposes a non-discretionary duty upon the BOPP Defendants to inquire about the validity of the judgment of conviction prior to initiating parole revocation proceedings. Fleming has failed to do so. The statutes which set forth the BOPP Defendants' responsibilities contain no requirement that a BOPP employee investigate the validity of an otherwise facially-valid underlying judgment of conviction, and no internal policy was in place to that effect.[21] (Parker Aff. at 1–2 (Ex. to Doc. No. 37); White Dep. at 90 (Ex. to Doc. No. 59).) Absent any facts that the BOPP Defendants were on notice that the facially-valid judgment of conviction may have been invalid, and absent any statute, rule or regulation which required them to inquire, the court finds that they are entitled to State-agent immunity.

Fleming also contends that the BOPP Defendants are not entitled to State-agent immunity because the United States Constitution, in particular the Fourth and Fourteenth amendments, "requires otherwise." (Doc. No. 62 at 7–10.) As outlined in this memorandum opinion and order, the acts of the BOPP Defendants violated neither the Fourth Amendment nor the Fourteenth Amendment. The court, therefore, finds that they are not deprived of State-agent immunity under the *Cranman* exception which denies immunity to state officials when the United States Constitution "requires otherwise." *Cranman,* 792 So.2d at 405. Because the BOPP Defendants are entitled to State-agent immunity on Fleming's false imprisonment claim, summary judgment is due to be entered in their favor on the state law claim.

### B. *Poe's Motion For Summary Judgment*

#### 1. *42 U.S.C. § 1983 Claims and Absolute Prosecutorial Immunity*

Under 42 U.S.C. § 1983, Fleming brings constitutional causes of action against Poe alleging that, while acting under color of law, she subjected him to cruel and unusual punishment and deprived him of liberty without due process of law, in violation of the Eighth and Fourteenth amendments, respectively. (2nd Am.Compl.¶¶ 25–26.) Poe moves for summary judgment based on absolute prosecutorial immunity and, alternatively, qualified immunity.

The court's first task is to ascertain the factual and legal parameters of Fleming's claims against Poe. Initially, the court observes that, unlike the Defendants employed by the BOPP, Poe was a litigant in Fleming's habeas corpus proceedings. There is no dispute that, as counsel of record in that litigation, she received ser-

---

**21.** To the extent that Fleming argues that Johnson and Riddle, as BOPP policymakers, should have implemented such a policy, subsection (2) of the *Cranman* formula expressly encompasses this scenario and, thus, bestows them with immunity. *See Howard,* 887 So.2d at 210.

vice of the district court's final judgment and had actual knowledge that Fleming's judgment of conviction had been vacated. Poe also knew that the copy of the recommendation of the magistrate judge which the court served on Fleming was "returned to sender."

Against this factual background, Fleming predicates his claim "upon [Poe's] failure to communicate th[e] order and its invalidation ... to the appropriate officials of [Poe's] own client, the State of Alabama." (Doc. No. 64 at 4.) Fleming's theory is that Poe had an obligation "to communicate to the appropriate persons within state government," for example, persons within the Department of Corrections and the BOPP, the fact that as a result of the May 5, 1998 federal court order "no agent of her client, the State of Alabama, had any authority or right to detain or interfere with the liberty of [Fleming]." [22] (*Id.; see also* Doc. No. 44 at 2–3; Doc. No. 67 at 3–4.) In other words, Fleming's claim is that Poe caused Fleming to remain under the conditions of his parole and ultimately to have his parole revoked through her failure, as the State's legal representative in the habeas corpus litigation, to ensure, through notification to an "appropriate" state official, that Fleming's judgment of conviction had been vacated.

In defense of Fleming's claim, Poe raises absolute prosecutorial immunity. Poe contends that her selection of individuals with whom she discussed the court's order was a decision within her prosecutorial discretion and was intimately intertwined with the advocacy decision of whether to file an objection to the recommendation of the magistrate judge or to appeal the federal district court's judgment. [23] For instance, Poe points out that the district court's order directed that the State had to retry Fleming, if at all, within 120 days and, that, therefore, she deemed it imperative that she communicate with the district attorney as he was "the only person with the authority to decide whether to re-file the charges against the Fleming within the 120 days allotted by the district court's order." (Doc. No. 66 at 4.)

Fleming counters that Poe's failure to notify "the appropriate persons within state government" of the district court's final judgment was purely an administrative failure and that, therefore, Poe is not entitled to absolute prosecutorial immunity. (*See* Doc. No. 67 at 16.) Because Poe's and Fleming's briefs focus primarily on this immunity defense, the court does too, and, for the reasons to follow, the court disagrees with Fleming.

"[A] prosecutor enjoys absolute immunity from § 1983 suits for damages when he [or she] acts within the scope of his [or her] prosecutorial duties." *Imbler v. Pachtman*, 424 U.S. 409, 420, 96

---

**22.** One state official whom Poe apparently did not notify was a named respondent, i.e., the warden who had custody over Fleming. Presumably, the warden is one of the individuals whom Fleming is saying would have been an "appropriate" state official. (*See* Doc. No. 64 at 3–4.) The court notes that the other named respondent, the Attorney General of the State of Alabama, was served with a copy of the district court's final judgment vacating Fleming's judgment of conviction. (Final Judgment (Doc. No. 59, Ex. 4).)

**23.** Poe says that "[i]t is not disputed that [her] post-judgment actions consisted of discussing the granting of the habeas petition with her supervisor[,] researching the viability of appealing from the order granting the habeas[,] discussing the granting of the habeas with the district attorney who had prosecuted the underlying case[,] and corresponding with the district attorney by mail." (Doc. No. 66 at 1–2.)

S.Ct. 984, 47 L.Ed.2d 128 (1976). The Supreme Court has taken a functional approach to the question of whether prosecutors are absolutely immune from liability under § 1983, explaining that "conduct in 'initiating a prosecution and in presenting the State's case,' ... insofar as that conduct is 'intimately associated with the judicial phase of the criminal process' " is entitled to such immunity. *Burns v. Reed,* 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (quoting *Imbler,* 424 U.S. at 430–431, 96 S.Ct. 984); *see also Mullinax v. McElhenney,* 817 F.2d 711, 714–715 (11th Cir.1987) ("prosecutors are entitled to absolute immunity from damages under Section 1983 for all acts 'intimately associated with the judicial phase of the criminal process' ") (quoting *Imbler,* 424 U.S. at 430, 96 S.Ct. 984). Moreover, absolute prosecutorial immunity also extends to a prosecutor's advocacy role in the post-conviction case, *see Bruce v. Wade,* 537 F.2d 850, 852 (5th Cir.1976), and "is not defeated by a showing that a prosecutor acted wrongfully or even maliciously." *Grant v. Hollenbach,* 870 F.2d 1135, 1138 (6th Cir. 1989).

■ On the other hand, absolute immunity does not extend to a prosecutor engaged in essentially investigative or administrative functions. *See Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) ("A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity."); *Burns,* 500 U.S. at 489–90, 111 S.Ct. 1934 (denying absolute immunity to prosecutor who gave legal advice to law enforcement officials in connection with investigative techniques). Thus, when a prosecutor functions as an administrator rather than as an officer of the court, the prosecutor is only entitled to qualified immunity. *See id.; see also Mullinax,* 817 F.2d at 715.

In *Buckley,* the court drew a bright-line rule that prosecutors are not absolutely protected from functions performed before probable cause exists; thus, it held that prosecutors perform investigative functions, and, do not act as advocates so as to entitle them to absolute immunity, for allegedly making false statements at press conferences and purportedly fabricating evidence during a grand jury investigation, prior to any finding of probable cause. *See Buckley,* 509 U.S. at 272–78, 113 S.Ct. 2606. *Buckley,* though, did not provide guidance for determining what investigative and administrative functions are absolutely protected after probable cause is established, although the court recognized that, even after a finding of probable cause, a prosecutor can perform functions that would be investigative or administrative and, thus, not absolutely protected. *See id.* at 274 n. 5, 113 S.Ct. 2606.

While it is clear based on the Supreme Court's "function test" articulated in *Imbler, Burns* and *Buckley* that a prosecutor is not entitled to absolute immunity simply because of his or her status as a prosecutor, *see, e.g., Buckley,* 509 U.S. at 273, 113 S.Ct. 2606, it is not always clear when a prosecutor's post-probable cause actions are not those of a prosecutor, but those of an administrator. The Supreme Court itself has recognized that "[a]t some point ... the prosecutor no doubt functions as an *administrator* rather than as an officer of the court" and that "[d]rawing a proper line between these functions may present difficult questions." *Id.* at 276 n. 7, 113 S.Ct. 2606.

Neither party has cited any cases where a court either granted or denied absolute

immunity for a prosecutor under similar circumstances. The court, though, through its independent research, found three cases where courts found that prosecutors were entitled to prosecutorial immunity for failing to provide notice of court orders to affected parties. Although the decisions are not squarely on point or binding, they are instructive. *See Brooks v. George County,* 84 F.3d 157 (5th Cir. 1996); *Pusey v. City of Youngstown,* 11 F.3d 652 (6th Cir.1993); *Holsey v. Hind,* 189 Ga.App. 656, 377 S.E.2d 200 (1988).

In *Brooks,* a pretrial detainee remained incarcerated in a county jail for eight months after the charges against him had been dismissed. *See* 84 F.3d at 160. Unbeknownst to the pretrial detainee, the district attorney orally moved for dismissal of the charges pursuant to a *nolle prosequi* order, and the court granted the motion. *See id.* at 161. The pretrial detainee did not learn of the order until eight months after its entry at which time he was released. *See id.* The pretrial detainee alleged that the district attorney in charge of the prosecution deprived him of liberty, in violation of the Fourteenth Amendment, by failing to notify the pretrial detainee's attorney of the *nolle prosequi* motion, allegedly in violation of state procedural rules. *See id.* at 167.

The Fifth Circuit, held that assuming *arguendo* that the district attorney violated the state procedural rule, the prosecutor was absolutely immune from liability in his individual capacity. *See id.* at 168. The court reasoned that the prosecutor's actions "of requesting that the court enter an order of *nolle prosequi* of [the pretrial detainee's] criminal charges, of having an order prepared for the court that memorialized the same, and the forwarding of such order to the clerk for filing are all

prosecutorial activities 'intimately associated with the judicial phase of the criminal process.'" *Id.* (quoting *Imbler,* 424 U.S. at 430, 96 S.Ct. 984).

In *Pusey,* which involved, among other claims, a § 1983 Fourteenth Amendment substantive due process claim, the plaintiff, as a crime victim, alleged that the prosecutor failed to notify her of a hearing date and of the fact that the defendant's charge could be reduced at that hearing. *See* 11 F.3d at 656. The plaintiff contended that the prosecutor was not absolutely immune "for failing to give notice to her because the duty to notify was an investigative or administrative duty." *Id.* at 658. The court rejected her contention, holding that the prosecutor's failure to inform the plaintiff of the hearing was "within the prosecutor's function as an advocate for the state as it is intimately associated with the judicial phase of the criminal process." *Id.* The court continued:

> The court hearing where the charge was reduced ... involved a judicial act. Furthermore, the prosecutor's determination to notify or failure to notify is intimately associated with the hearing and is simply a litigation-related duty. Giving notice to witnesses, victims or defendants is certainly one of those core prosecutorial functions which is protected by absolute immunity. Indeed, plaintiff's desire to attend the reduction hearing arose because she wanted to object to the plea arrangement and persuade the prosecutor and the judge to bind defendant ... over to the grand jury. Her very desire in attending the hearing illustrates that the prosecutor's duty, as related to giving her notification for the reduction hearing, involved duties where the prosecutor functioned as an advocate of the state and duties which are inti-

mately associated with the criminal process.

Thus, the District Court correctly determined that [the prosecutor] is entitled to absolute immunity from suit in her personal capacity and we affirm the order dismissing all claims against [the prosecutor] in her personal capacity.

*Id.* at 658–59. The Sixth Circuit held that the prosecutor was entitled to absolute immunity from suit in her individual capacity on all § 1983 claims. *See id.* at 659.

Finally, in *Holsey,* an arrestee was held in jail for 40 days without cause because the district attorney's office failed to serve the arrestee or his counsel with a copy of the written motion and order which dismissed the charges for insufficient evidence. *See* 377 S.E.2d at 200. The arrestee brought an action for damages against the district attorney, alleging that it was the district attorney's custom and practice not to comply with a statutory duty which required the district attorney to notify a defendant or his lawyer of such dismissal orders. *See id.* at 200–01.

Holding that the district attorney was entitled to absolute immunity under state law, the court relied on the teachings of the Supreme Court's decision in *Imbler, supra.* The court held that the prosecutor's conduct was intimately associated with the judicial phase of the criminal process and was, therefore, within the scope of absolute prosecutorial immunity. The court reasoned:

This issue cannot be resolved merely by inquiry into whether the alleged breach of duty involved an exercise of judgment or discretion on the part of the appellee or his assistants. No one, for example, would seriously contend that a decision by a prosecutor on such a matter as

hiring or firing a secretary would be anything other than administrative, although such a decision would obviously involve an exercise of judgment or discretion connected with the duties of his office. The determining factor instead appears to be whether the act or omission is " 'intimately associated with the judicial phase of the criminal process.' " *Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987), citing *Imbler v. Pachtman, supra,* 424 U.S. at 430–431, 96 S.Ct. at 995–96.

Pursuant to this rationale, we conclude that although the failure to serve the appellant or his counsel with a copy of the motion and order resulting in the dead-docketing of the charges may not have involved the exercise of any prosecutorial discretion or judgment, such conduct, being intimately associated with the judicial phase of the criminal process, was nevertheless within the scope of the appellee" absolute prosecutorial immunity.

*Id.* at 657.

In *Brooks* and *Holsey,* the district attorneys arguably violated state rules in failing to notify pretrial detainees that the charges against them had been dismissed. As a result, each detainee remained in jail much longer than legally required. *Pusey* involved a prosecutor's failure to notify a crime victim of a court hearing where the offender's charges were reduced. In each case, the prosecutor was entitled to judicial immunity because the alleged failures to give proper notice were closely related to the judicial phase of the criminal proceedings.

Here, similarly, Fleming complains of Poe's failure to give proper notice. As stated, Fleming complains that Poe failed

to "communicate" to an "appropriate" state official that, based on the federal district court's final judgment, Fleming must be released from the attendants of his underlying judgment of conviction, including his parole restrictions and incarceration. (Doc. No. 64 at 4.)

■ Assuming *arguendo* that Poe's failure to notify an "appropriate" state official breached Poe's duties as an attorney for the State of Alabama or even violated a state rule or regulation, the court finds that Poe's alleged misconduct was inextricably intertwined with her prosecutorial role in the post-conviction proceedings and, in particular, with her assessment of whether to appeal. Poe's conduct in examining the recommendation of the magistrate judge, discussing the implications of its directives with the district attorney, and researching whether the law supported the magistrate judge's conclusion are prosecutorial activities "intimately associated with the judicial phase of the [post-conviction] process." *Burns*, 500 U.S. at 486, 111 S.Ct. 1934 (quoting *Imbler*, 424 U.S. at 430–431, 96 S.Ct. 984). The failure to serve cannot be separated from Poe's prosecutorial decisions as an advocate of the state and, thus, cannot be characterized as merely an administrative act. The court, therefore, finds that Poe is entitled to prosecutorial immunity on Fleming's 42 U.S.C. § 1983 claims against her.[24]

2. *State Law Claim for False Imprisonment and State-agent Immunity*

■ The court finds that Poe also is entitled to absolute immunity under state law. Immunity for prosecutors under state law "is at least as broad as the immunity under a § 1983 action." *Bogle v. Galanos*, 503 So.2d 1217, 1219 (Ala.1987). Alternatively, the court finds that Poe is entitled to State-agent immunity on the false imprisonment claim. (Doc. No. 53 at 15–20; Doc. No. 66 at 6.) Poe was "exercising judgment in the enforcement of the criminal laws of the State" during her representation of the respondents in Fleming's habeas corpus litigation, *Cranman*, 792 So.2d at 405, and Fleming has not demonstrated that any of the exceptions to State-agent immunity apply in this case. Accordingly, summary judgment is due to be entered in Poe's favor on the false imprisonment claim.

### VI. ORDER

For the foregoing reasons, it is CONSIDERED and ORDERED that the motion for summary judgment (Doc. No. 57) filed by Defendants Eddie Dowdell, Johnnie Johnson, Donald Parker, Gladys Riddle and Martha White be and the same is hereby GRANTED.

It is further CONSIDERED and ORDERED that the motion for summary judgment (Doc. No. 52) filed by Defendant Beth Poe be and the same is hereby GRANTED.

---

**24.** Alternatively, the court finds that Poe is entitled to qualified immunity, as Fleming has not demonstrated that Poe's conduct violated clearly established constitutional rights of which a reasonable person should have known. *See Harlow*, 457 U.S. at 818, 102 S.Ct. 2727; *see also Rich*, 841 F.2d at 1563.